STATE of Missouri, Respondent,

v.

Willie J. TIMMONS, Jr., Appellant.

Nos. WD 51076, WD 53248.

Missouri Court of Appeals,
Western District.

Sept. 2, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1997.

Application to Transfer Denied
Dec. 23, 1997.

Elizabeth Unger Carlyle, Lee's Summit, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Lisa A. Fischer, Assistant Attoney General, Jefferson City, for respondent.

Before ULRICH, P.J., and BERREY and HANNA, JJ.

ULRICH, Chief Judge, Presiding Judge.

Willie Timmons appeals his convictions following a jury trial of seven counts of robbery in the first degree, section 569.020, RSMo Cum.Supp.1992, and seven counts of armed criminal action, section 571.015, RSMo Cum. Supp.1992, and the denial of his Rule 29.15 post-conviction motion.

Mr. Timmons raises six points on appeal. He contends on direct appeal that the trial court erred (1) in not permitting venire questions as to why a defendant might not testify,(2) by overruling his motion to suppress evidence, and (3) in denying his oral motion for a continuance. Mr. Timmons final three points are an appeal from the trial court's denial of his Rule 29.15 motion for ineffective assistance of counsel. Mr. Timmons argues that his trial counsel was ineffective on the grounds that he: (4) failed to secure two alibi witnesses, (5) failed to secure a continuance, and (6) disclosed privileged communications.

The judgment of convictions is affirmed, and the denial of Rule 29.15 post-conviction motion is affirmed.

### Facts

On the evening of July 4, 1993, around 11:00 p.m., Pam and David Osborn exited their vehicle parked in the lot of a restaurant located in Jackson County, Missouri. David Osborn walked ahead of his wife, Pam, toward the restaurant but turned around to notice an individual holding a firearm standing next to Pam. The individual, holding a silver, chrome automatic weapon, demanded that the Osborns give him their valuables. They complied and ran to the front entrance of the restaurant for assistance.

At the same time the Osborns ran for assistance, Lori Taubin, Leanne Nixon, Marty Bellm, and Travis Earlywine were parking their black GEO Tracker in the restaurant parking lot. Travis Earlywine exited the car. Before Ms. Taubin, Ms. Nixon, and Mr. Bellm exited the vehicle, they observed an individual hold a silver, shiny gun to Mr. Earlywine's head. Then, the individual, later identified as Willie Timmons, leaned his head into the car and demanded money from the occupants at gunpoint. Ms. Taubin threw

her wallet outside of the window of the vehicle and managed to flee from the car before Mr. Timmons ordered everyone out of the vehicle.

About this same time, Ed Brinkmeyer, a restaurant employee, decided to inspect the parking lot because the Osborns had reported that they had just been robbed. As Brinkmeyer walked outside, he observed a group of persons standing next to a GEO Tracker. Mr. Timmons turned and demanded money at gunpoint from Mr. Brinkmeyer when he approached the group. Mr. Timmons threatened to shoot Mr. Brinkmeyer if he did not hand him his valuables. After receiving items from the victims, Mr. Timmons jumped into the GEO Tracker and fled.

Around 11:30 p.m. that same evening, Marilyn Fortney was in a grocery store parking lot in Jackson County waiting for her daughter to finish grocery shopping. While Ms. Fortney sat in the car, Cindy Auston and Tom Cusick were walking to their vehicle that was parked in the same parking lot. Ms. Auston and Mr. Cusick noticed a black GEO Tracker parked next to their vehicle with an individual, later identified as Mr. Timmons, sitting behind the wheel. Mr. Timmons pointed a handgun at Mr. Cusick and Ms. Auston and demanded and received money from them.

After robbing Ms. Auston and Mr. Cusick, Mr. Timmons approached Ms. Fortney's car. Ms. Fortney heard a tap on the window and looked into the barrel of the handgun held by Mr. Timmons. Mr. Timmons instructed Ms. Fortney to roll down the window and give him her money. After Ms. Fortney complied with Mr. Timmons's demands, Mr. Timmons entered the black GEO Tracker and drove away.

The GEO Tracker stolen by Mr. Timmons was recovered several blocks from his residence. Police found empty purses and wallets belonging to the victims within the vehicle. Mr. Timmons was later apprehended after a car he was in was involved in a vehicular accident. Police officers recovered jewelry and a weapon from the wrecked vehicle. The weapon was identified as the one used to rob the victims. Mr. Timmons was arrested after Ms. Fortney, Mr. Cusick, Ms. Auston, Mr. Brinkmeyer, and Mr. Bellm identified him during a lineup as the man who had robbed them.

Following a jury trial, Mr. Timmons was convicted of seven counts of robbery and seven counts of armed criminal action. He was sentenced to thirty years on each count of robbery and five years on each count of armed criminal action to be served concurrently.

Mr. Timmons filed a Rule 29.15 motion and later an amended motion. The trial court denied the motion after an evidentiary hearing. A motion for reconsideration was subsequently overruled, and the appeal was then consolidated with his direct appeal from the convictions.

## I. Limitations on Voir Dire

In his first point on appeal, Mr. Timmons contends that the trial court's limitations on defense counsel's voir dire inquiries were an abuse of discretion. He argues that the trial court erroneously denied counsel's voir dire inquiries regarding whether the jury could be impartial in reaching a verdict, even if Mr. Timmons chose not to testify in his own defense. Specifically, the court refused to allow defense counsel's question to veniremen as to "whether or not they might accept that [Mr. Timmons] just didn't testify because he was nervous."

The questioning of juries about their qualifications is conducted under the supervision of the trial court, and the nature and extent of the questions counsel may ask are discretionary with the court. *State v. Ramsey*, 864 S.W.2d 320, 335 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Hudson*, 815 S.W.2d 430, 432 (Mo.App.1991). Rulings of the trial court during voir dire will be disturbed on appeal only when the record shows an abuse of discretion and a real probability of injury to the complaining party. *Ramsey*, 864 S.W.2d at 335. An appellant has the burden of demonstrating a real probability that he was prejudiced by the trial court's decision. *State v. Martin*, 815 S.W.2d 127, 129 (Mo.App.1991).

Courts may exclude inquiries which are marginally relevant or irrelevant to issues that are present in the case. *Id.* at 129–130. They may exclude questions which are open-ended inquiries into a venire member's beliefs, misstate the law, arguably seek commitments from the jury panel, or confuse or mislead the venire members. *See e.g. State v. Kreutzer,* 928 S.W.2d 854, 861, 864–65 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997) (holding trial court properly excluded open questions into how prospective jurors "felt" or "thought"); *State v. Bannister,* 680 S.W.2d 141, 145 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985) (limiting use of open-ended questions is proper exercise of court's discretion); *State v. Twitty,* 793 S.W.2d 561, 565 (Mo. App.1990) (affirming trial court's exclusion of questions of how veniremen "feel").

Determining whether Mr. Timmons's proposed inquiry was proper is not necessary for the resolution of this issue. Even assuming *arguendo* that the trial court erred in not allowing the specific voir dire inquiry, no evidence was presented to suggest that Mr. Timmons was prejudiced by the trial court's action. While the trial court did not allow this particular question, it did allow defense counsel to ask whether the venire would infer guilt if Mr. Timmons did not testify. This question was sufficient to determine whether the jury members would infer guilt to Mr. Timmons if he did not testify.

To the question asked, only two members of the jury panel indicated that absence of Mr. Timmons's testimony would concern them. Both venire members, nevertheless, indicated by their silence that they understood Mr. Timmons was not required to testify and that they could not speculate as to why he chose not to testify. This questioning permitted by the trial court provided defense counsel with ample opportunity to discover whether the jury panel was able to be impartial if Mr. Timmons did not testify. Thus, Mr. Timmons suffered no prejudice by the court's restrictions during voir dire.

Point one is denied.

## II. Suppression of Identification Evidence.

As his second point on appeal, Mr. Timmons contends that the trial court erred in not suppressing the identification testimony of the witnesses who viewed the pretrial lineup. He claims that the identification procedures employed by the police were highly suggestive. Although this issue was not preserved by Mr. Timmons in his motion for a new trial and is, therefore, waived, the issue is considered *sub gratis.*

The admissibility of identification testimony involves a two-step analysis. *State v. Jones,* 917 S.W.2d 622, 624 (Mo.App.1996). To establish reversible error, an appellant must demonstrate (1) that the procedures employed by police were impermissibly suggestive and (2) that those procedures made subsequent identification unreliable. *Id.* An appellant "must clear the suggestiveness hurdle before procuring a reliability review." *Id.* In determining reliability, an appellate court considers the totality of the circumstances surrounding the identification. *State v. Simmons,* 875 S.W.2d 919, 922 (Mo.App. 1994). These circumstances include: (1) the witness's opportunity to view the suspect at the time of crime; (2) the witness's degree of attention to the event; (3) the accuracy of prior descriptions of the criminal made by the witness; (4) the witness's level of certainty; and (5) the length of time between the occurrence of the crime and the identification in question. *Id.* Inferring that a suspect is present in lineup is not unduly suggestive because the victim anticipates the presence of the offender. *State v. Caldwell,* 785 S.W.2d 98, 101 (Mo.App.1990).

Mr. Timmons argues that the witnesses' identification of him at a pretrial lineup was highly suggestive because he was the only one of the four subjects in the lineup who had facial injuries. Mr. Timmons was arrested after his involvement in a vehicular accident in which he suffered a broken leg and facial injuries. To avoid any suggestiveness, the police employed a video lineup, which did not show Mr. Timmons's broken leg. Nevertheless, Mr. Timmons contends that witnesses were aware of facial injuries

due to the car accident, making him easy to identify.

The evidence does not support Mr. Timmons's theory. Of the seven witnesses who identified Mr. Timmons, only two were informed prior to viewing the lineup that police had apprehended a suspect as a result of a car accident. These witnesses were not allowed to identify Mr. Timmons at trial because of the possibility of suggestiveness by the police. None of the remaining five witnesses were aware that Mr. Timmons had been in a car accident. Whether Mr. Timmons had visible facial injuries during the lineup is not relevant because the witnesses were unaware of the accident. The presence of facial injuries might even have made identification of Mr. Timmons more difficult, as he may have looked slightly different than he did on the night of the robberies, thus strengthening the credibility of the witnesses' identification testimony.

■ Mr. Timmons further argues that the lineup was suggestive because the police had stated to the victims that a possible subject was in the lineup. Whether the police suggested a suspect was present is moot, however, as "it is implicit in a line-up or photographic array that one of the persons shown is a suspect." *Jones,* 917 S.W.2d at 624; *State v. Cook,* 753 S.W.2d 28, 30 (Mo. App.1988).

■ Mr. Timmons's theory is deficient not only on the "suggestiveness" prong of the *Simmons* analysis but on the "reliability" prong as well. Clear from the circumstances of the lineup is that the witnesses' identifications were reliable. Having chosen to rob his victims in, not one, but two well-lighted lots over a period of several minutes, Mr. Timmons provided ample opportunity for the witnesses to view him. All of the witnesses gave descriptions that were both consistent and accurate with their testimony at trial. All the witnesses unequivocally stated that they were able to identify Mr. Timmons as the perpetrator. Finally, no evidence was presented that the time period between the crime and the identification procedure was unduly suggestive. *See Jones,* 917 S.W.2d at 624 (holding that a lineup three months after the crime was not suggestive).

For all of the foregoing reasons, point two is denied.

### III. Failure to Secure a Continuance

■ Mr. Timmons next argues that the trial court erred in declining his motion for a continuance. Mr. Timmons fails to argue the point in his brief, and it is, therefore, abandoned. *See State v. Vivone,* 857 S.W.2d 489, 498 (Mo.App.1993) (holding defendant waived issue by failing to discuss it in brief on appeal).

### IV. Ineffective Assistance of Counsel

Mr. Timmons's final three points are an appeal from the trial court's denial of his Rule 29.15 motion for ineffective assistance of counsel. Mr. Timmons argues that his trial counsel was ineffective for (A) failing to secure alibi witnesses; (B) failing to secure a continuance; and (C) disclosing privileged information to the court.

■ Appellate review of the denial of a post-conviction motion is limited to the determination of whether the findings of fact and conclusions of law are "clearly erroneous." Rule 24.035(j); *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996), *cert. denied,* — U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, this court is left with the definite and firm impression that a mistake has been made. *Moore v. State,* 827 S.W.2d 213, 215 (Mo. banc 1992).

■ In reviewing claims of ineffective assistance of counsel, this court must look to whether appellant has established that (1) his counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) that appellant was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). "Prejudice exists only where trial counsel's acts or failures to act are outcome determinative." *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The mov-

ant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Id.*

### A. Failing to Secure Witnesses

Mr. Timmons claims that trial counsel was ineffective for failing to secure the presence of alibi witnesses at trial. He argues that he was prejudiced by not having the witnesses appear at trial, in that they were critical to his alibi defense.

The decision not to call a witness is trial counsel's and is most often excused as a matter of trial strategy. *State v. Hayes,* 785 S.W.2d 661, 663 (Mo.App.1990). The selection of witnesses and the introduction of evidence are questions of strategy, and the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel. *State v. Shurn,* 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994); *Sanders v. State,* 738 S.W.2d 856, 858 (Mo. banc 1987) (citing *Franklin v. State,* 655 S.W.2d 561, 565 (Mo.App.1983)).

Mr. Timmons argues that his counsel was ineffective for failing to secure the testimony of Frank Timmons and Larry Timmons as alibi witnesses. Mr. Timmons argues that his uncles' testimony would have established that he was not in the state on the date of the alleged robberies.

The evidence at the post-conviction motion hearing discloses that after speaking to the investigator who interviewed the potential witnesses, trial counsel had reason to doubt the believability of the witnesses. Trial counsel further stated at the post-conviction motion hearing that he was disinclined to use the witnesses because of his perception that juries harbor an unfavorable opinion of alibi witnesses who are related to the accused. Counsel's choice not to obtain the testimony of the two out-of-state witnesses was a matter of trial strategy. The facts presented, therefore, reveal that trial counsel was not ineffective for failing to secure the witnesses.

### B. Failure to Secure a Continuance

Mr. Timmons also claims that his trial counsel was ineffective for refusing to request a continuance despite the court considering his *pro se* motion for a continuance.

The decision to grant or deny a continuance is within the sound discretion of the trial court. *State v. Schaal,* 806 S.W.2d 659, 666 (Mo. banc 1991), *cert. denied,* 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992). "A very strong showing is required to prove abuse of that discretion; the party requesting the continuance must show prejudice." *State v. Chambers,* 891 S.W.2d 93, 100 (Mo. banc 1994). "In passing upon an application for a continuance the court is not limited to a consideration of the facts stated in the affidavit of the defendant, [it] may inquire into the truth of statements contained therein either by hearing other evidence or by applying [its] own knowledge of what had occurred in the case up to the time the application is made, especially where, from all the circumstances, [it] is led to question the good faith of the accused." *State v. Le Beau,* 306 S.W.2d 482, 486 (Mo. banc 1957).

At trial, Mr. Timmons made a *pro se* motion for a continuance on the grounds that he needed more time to procure the testimony of Larry and Frank Timmons. Mr. Timmons suggested that his two uncles could attest to his being in Minnesota at the time of the alleged robberies. The two witnesses lived out-of-state and did not volunteer to appear on Mr. Timmons's behalf. Mr. Timmons's trial counsel indicated that after consulting with the investigator who interviewed the two witnesses, he was not inclined to use the witnesses at trial. As was noted earlier, he expressed concern over using family members of Mr. Timmons as alibi witnesses given the likelihood that a jury would not find them credible.

The trial court was unconvinced as to the need for Larry and Frank Timmons's testimony due to the skepticism of both the investigator as well as defense counsel as to the uncles' credibility. Furthermore, the five previous continuances, causing nearly two years of delay, weighed heavily against the granting of yet another continuance. Under

these circumstances, therefore, the trial court's refusal to grant a sixth continuance was not an abuse of discretion.

Even assuming *arguendo* that trial counsel was deficient for not seeking a continuance, a premise which is not supported by the evidence, Mr. Timmons is unable to establish the prejudice element required for an ineffective counsel claim. The trial court considered Mr. Timmons's *pro se* motion for a continuance. Mr. Timmons was not, therefore, prejudiced by trial counsel's unwillingness to raise a continuance request.

### C. Disclosure of Privileged Material

█ As a final point, Mr. Timmons claims he was denied effective assistance of counsel when his attorney disclosed purportedly privileged information to the court during trial when counsel discussed Mr. Timmons's *pro se* motion for a continuance. Mr. Timmons argues that trial counsel's disclosure prejudiced the outcome of his case.

█ The attorney-client privilege is established by section 491.060, RSMo 1994. The privilege protects "confidential communications between an attorney and client concerning representation of the client." *In re Marriage of Hershewe*, 931 S.W.2d 198, 202 (Mo.App. S.D.1996) The policy is fundamental, and disclosure is the exception. *Id.* Here, whether the information about counsel's perception of the need for the two potential witnesses is privileged information under the facts presented and protected by the attorney-client relationship, is questionable.

█ However, even if the information disclosed by counsel upon the court's inquiry was privileged, Mr. Timmons waived the privilege. The attorney-client privilege belongs to the client. *State v. Carter*, 641 S.W.2d 54, 57 (Mo. banc 1982), *cert. denied*, 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983); *Johnson v. Schmidt*, 719 S.W.2d 825, 827–828 (Mo.App.1986). An attorney is incompetent to testify "concerning any communication made to him by his clients in that relation or his advice thereon without consent of such client." *Hershewe*, 931 S.W.2d at 201. A client consents to disclosure by voluntarily revealing the protected informa-

tion, *Pipes v. Sevier*, 694 S.W.2d 918, 924 (Mo.App. W.D.1985), or by placing the subject matter of the privileged communication in issue in the litigation. *Sappington v. Miller*, 821 S.W.2d 901, 904 (Mo.App. W.D.1992). In addition, waiver of the privilege may occur where proof of the elements of a party's claim will necessarily entail proof of the contents of an attorney-client communication. *State ex rel. Chase Resorts, Inc. v. Campbell*, 913 S.W.2d 832, 837 (Mo.App. E.D.1995). *See also State v. Lingar*, 726 S.W.2d 728, 740 (Mo. banc 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987) (admitting privileged communications during penalty stage of trial).

Mr. Timmons waived the attorney-client privilege by affirmatively placing the communications between himself and his attorney at issue when he presented his *pro se* motion to the court. The transcripts disclose that Mr. Timmons, personally, first requested a continuance, and trial counsel simply responded to relevant questions from the court as it considered Mr. Timmons's request. The court's inquiry was directed to the necessity of the witnesses that Mr. Timmons wanted to appear who were not present and to the out-of-state location of the witnesses whose compulsory attendance was sought. Because the information revealed by trial counsel was necessary for the resolution of the motion, Mr. Timmons waived the attorney-client privilege as to those communications.

Moreover, once Mr. Timmons presented the issue to the court, he was not able to use the attorney-client privilege as a shield against the introduction of relevant information necessary for the court to consider in ruling on his motion. *See State ex rel. Rowland v. O'Toole*, 884 S.W.2d 100, 103 (Mo. App.1994) (holding that attorney-client privilege may be waived where the client places the subject matter of the privileged communications in issue). Trial counsel was not ineffective for revealing information required by the trial court when considering Mr. Timmons's *pro se* motion for a continuance.

Finally, Mr. Timmons cannot demonstrate prejudice resulting from trial counsel's disclosure of the alleged privileged communications. The court would certainly not have

granted the continuance had Mr. Timmons's counsel not responded to the court's questions about counsel's perception of the need for the two prospective witnesses. Therefore, Mr. Timmons cannot establish that the information disclosed to the court affected the outcome of the case. Point denied.

The judgment of convictions and the order denying the Rule 29.15 motion are affirmed.

All concur.