# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1731

_____

Kenneth Lee Baker; Steven       *
Robert Baker,       *
      *
      Plaintiffs/Appellees,       *
      *
Melissa Thomas,       *
      *   Appeal from the United States
      Plaintiff,       *   District Court for the Western
      *   District of Missouri.
      v.       *
      *
General Motors Corporation,       *
      *
      Defendant/Appellant.       *
      *

_____

No. 99-2002

_____

      *
      *
In re: General Motors Corporation,       *
      *
      Petitioner.       *
      *

_____

Submitted: December 16, 1999

Filed: April 14, 2000

_____

Before BEAM, HEANEY, and HANSEN, Circuit Judges.

_____

BEAM, Circuit Judge.

General Motors Corporation (GM) petitions for a writ of mandamus, seeking relief from a magistrate judge's order directing GM to produce six documents for which GM asserts privilege.[1]  We grant GM's petition and remand.

## I.    BACKGROUND

Beverly Garner was a passenger in a Chevrolet Blazer that was involved in a head-on collision with another vehicle.  After the collision, a fire broke out in the engine compartment of the Blazer.  Garner died in the accident.  Garner's sons, Kenneth and Steven Baker (the Bakers), then brought a products liability action contending their mother was killed as a result of a faulty fuel pump that caused the engine fire in the Blazer.  The Bakers prevailed at trial in 1993.  On appeal, we reversed and remanded for a new trial.  See Baker v. General Motors Corp., 86 F.3d 811 (8th Cir. 1996), rev'd in part by, 522 U.S. 222 (1998) and, 138 F.3d 1225 (8th Cir. 1998) (ordering remand).

The present discovery dispute centers around a document created by Edward Ivey, a GM employee.  The document analyzed the potential expense of the loss of human life per-vehicle due to fuel-fed engine fires.  Before the first trial, GM filed a motion arguing that the document should not be admitted because it was irrelevant.  As part of its argument, GM asserted that Ivey's superiors at GM had not requested that

_____

[1]GM also seeks appellate review of the order.  Prior to oral argument, we consolidated the petition and appeal.  Because we grant the petition, we do not decide whether this order was subject to appellate review, and we dismiss the appeal as moot.

he perform the analysis and that Ivey had never distributed the document to other company officials. The district court admitted the document, and Ivey eventually testified to the same facts advanced by GM in its motion.

In 1998, in an unrelated lawsuit involving GM fuel pumps, a Florida trial court ordered GM to produce documents that related to an interview of Ivey conducted by GM's attorneys. See McGee v. General Motors Corp., No. 92-23582(25) (Fla. 17th Jud. Cir. Feb. 10, 1998). Copies of two of these documents were later posted on the Internet. After reading these documents, the Bakers asked the district court for an order instructing GM to produce a number of documents related to interviews of Ivey conducted by GM's litigation team.

The district court ordered GM to produce the documents to the Bakers and to the court for review. We upheld the order instructing GM to produce the documents to the court. See In re General Motors Corp., 153 F.3d 714, 716 (8th Cir. 1998). However, we reversed the order instructing GM to produce the documents to the Bakers until the district court had conducted a review to determine whether the documents were protected by the work-product doctrine or attorney-client privilege. See id.

After review, a magistrate judge[2] ordered GM to provide six documents to the Bakers. Four of the documents are the hand-written notes taken by GM's attorneys during interviews of Ivey; one document is the hand-written notes taken by a non-attorney member of GM's litigation team during an interview conducted in the presence of a GM attorney; and one document is a typed summary prepared by a GM attorney shortly after an interview. The judge rejected GM's assertion that the documents were protected work product because, in addition to containing the legal impressions of

---

[2]This case was originally before the late Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri. After his death, the case was reassigned to a magistrate judge.

-3-

counsel, the documents contained some factual information. The judge also rejected GM's claim of attorney-client privilege because she found GM waived the privilege by placing the contents of the documents at issue in the case. The judge determined GM had placed the contents at issue by making assertions of fact and using testimony at trial that may be contrary to the information contained in the documents. GM now seeks a writ of mandamus preventing the enforcement of the order.

## II.    DISCUSSION

When a magistrate judge has rejected a claim of privilege, we will issue a writ of mandamus when the party seeking the writ has no other adequate means to attain the desired relief and the ruling is clearly erroneous. See In re General Motors Corp., 153 F.3d at 715. This extraordinary remedy is appropriate because the judge's order would otherwise destroy the confidentiality of the communications at issue. See id.

In its petition, GM continues to assert that the documents in question are protected by work-product doctrine and by attorney-client privilege. In this diversity case, we apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims. See Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir. 1987). The parties disagree as to whether Michigan or Missouri law applies to the attorney-client privilege claims.[3]   We need not resolve this choice-of-law dispute

---

[3]The Bakers argue for Michigan law because they believe that Howe v. Detroit Free Press, Inc., 487 N.W.2d 374 (Mich. 1992), helps their cause. The Bakers would like to import the reasoning used in that case to determine whether the Howe plaintiffs had waived a statutory privilege against the release of probation reports. See id. at 376-77, 383-84. However, the Bakers reliance on Howe is misplaced because that case did not involve the attorney-client privilege and the court specifically noted that not every waiver of privilege claim should be determined using its reasoning. See id. at 83. Moreover, it does not appear that Michigan courts are using the Howe reasoning to analyze waiver of attorney-client privilege. See Franzel v. Kerr Mfg. Co., 600

because we find the documents are protected by the work-product doctrine and by the attorney-client privilege law of both states.[4]

## A. Work-Product Doctrine

There are two kinds of work product—ordinary work product and opinion work product. Ordinary work product includes raw factual information. See Gundacker v. Unisys Corp., 151 F.3d 842, 848 n.4 (8th Cir. 1998). Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. See id. at n.5. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. See Fed. R. Civ. P. 26(b)(3). In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud. See In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977). Initially, we note that these documents were prepared in anticipation of litigation and that there are no special circumstances.[5]

We find the judge clearly erred in holding that the documents were not protected work product. Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity. See In re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973) (attorney's personal recollections, notes and memoranda from interviews are absolutely protected work

N.W.2d 66, 74-75 (Mich. Ct. App. 1999).

[4]The Bakers move to strike portions of GM's reply brief relating to the choice-of-law issue. We deny this motion because we find the arguments are a fair response to arguments advanced in the Bakers's brief.

[5]The Bakers do not dispute the judge's finding that the interviews and documents were not for the purpose of furthering a crime or fraud.

product); see also Upjohn Co. v. United States, 449 U.S. 383, 399-400 (1981) ("[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes"). Attorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant. In this way, attorney notes are akin to an attorney's determination as to which documents are important to a case—the latter being something we have also held to be protected work product. See Petersen v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992). Thus, we find that the judge clearly erred because she ordered disclosure of opinion work product.

In addition, even if we were to assume the documents were ordinary work product, the Bakers have not shown a substantial need for the documents and that the substantial equivalent of the information cannot be procured by other means. Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. See In re Grand Jury Proceedings, 473 F.2d at 849. A party also does not demonstrate substantial need when it merely seeks corroborative evidence. See Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1308 (D.C. Cir. 1997) (no substantial need when documents sought would merely reinforce known inconsistencies).

Basically, the Bakers seek these documents to search for evidence to counter the expected testimony of Ivey. At the first trial, Ivey testified that the document he created was only a self-assigned intellectual exercise and that the document had not been circulated to other GM employees. But, the Bakers can already counter Ivey's testimony with the testimony of Ron Elwell. At the first trial, Elwell provided testimony that substantially contravened Ivey's. Thus, the Bakers have not demonstrated substantial need and undue hardship because they merely seek corroborative evidence to counter the testimony of an available witness.

**B.      At-Issue Waiver of the Attorney-Client Privilege**

The judge also found that any attorney-client privilege claims were waived because GM put the documents at issue in the litigation.  The Bakers contend that at-issue waiver of attorney-client privilege would necessitate a finding of waiver for any work-product protection.  We are skeptical of this argument.  See In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir. 1988) (waiver of attorney-client privilege does not waive protection accorded to opinion work product).  However, we need not resolve this issue because we find the Bakers's argument for at-issue waiver of the attorney-client privilege fails on the merits.

A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue.  See Sappington v. Miller, 821 S.W.2d 901, 904 (Mo. Ct. App. 1992); McCarthy v. Belcher, 340 N.W.2d 848, 850 (Mich. Ct. App. 1983).  There are two situations in which at-issue waiver is commonly found.  The first is when proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client communication—for example, when a client uses reliance on legal advice as a defense or when a client brings a legal malpractice action.  See State v. Campbell, 913 S.W.2d 832, 837 (Mo. Ct. App. 1995); see also People v. Mitchell, 560 N.W.2d 600, 612 n.27 (Mich. 1997) (defendant who asserts ineffective assistance of counsel waives attorney-client privilege).  The second is when a client's testimony refers to a specific privileged document. See, e.g., Charles Woods Television Corp. v. Capital Cities/ABC, Inc., 869 F.2d 1155, 1162 (8th Cir. 1989) (applying Missouri law to find no at-issue waiver when witness testified generally about an issue and never mentioned any particular communication); McCarthy, 340 N.W.2d at 850 (attorney-client privilege waived when client testifies on direct examination about a communication).

The Bakers would like to extend the application of at-issue waiver to a situation where a party has used witness testimony and made factual representations that were

allegedly contrary to what the privileged documents will reveal. But, courts in both Michigan and Missouri have rejected the extension of at-issue waiver to this type of scenario.[6] See State v. Dumas, 898 S.W.2d 689, 690-91 (Mo. Ct. App. 1995) (no waiver of attorney-client privilege when defendant made factual allegations in opening statement that were contrary to his attorney's recollection of events); Kubiak v. Hurr, 372 N.W.2d 341, 345 (Mich. Ct. App. 1985) (no waiver of attorney-client privilege when client has merely testified about facts that client also related to her attorney). Thus, we find that the judge clearly erred in her application of at-issue waiver under both Michigan and Missouri law.

## III.  CONCLUSION

We grant GM's petition to bar discovery of the documents, and we remand for further proceedings consistent with this opinion.

HANSEN, Circuit Judge, concurring.

I join Judge Beam's opinion with respect to Parts I and III, and I concur in the portions of Part II A that address the issue of opinion work product. I also concur in the judgment.

I agree entirely with Judge Beam's well-reasoned analysis of the opinion work product doctrine issue.[7] We long ago held that an "attorney's personal recollections,

---

[6]The Bakers's best authority to support their at-issue waiver argument is In re Southern and Eastern District Asbestos Litigation, 730 F. Supp. 582 (S.D.N.Y. 1990). But, that case did not apply either Michigan or Missouri law.

[7]Judge Beam's opinion states that even if the documents in this case are deemed ordinary work product, the Bakers have not shown a substantial need for the documents because Ron Elwell can counter Ivey's testimony. Judge Heaney's opinion states that

notes, and memoranda" containing a witness's oral statements are "absolutely, rather than conditionally, protected." In re Grand Jury Proceedings (Duffy), 473 F.2d 840, 848 (8th Cir. 1973). In Upjohn v. United States, 449 U.S. 383, 401 (1981), the United States Supreme Court declined to address the question of whether any "showing of necessity can overcome protection of work product which is based on oral statements from witnesses." In doing so, however, it cited our In re Grand Jury Proceedings as a case holding that the protection of work product based upon oral statements from witnesses cannot be overcome by any showing of necessity. In re Grand Jury Proceedings' absolute protection for work product based on a witness's oral statements remains the law in this circuit and, as a panel, we are bound by its holding. See Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) ("One panel of the circuit may not overrule a decision issued by another panel of the court"), cert. denied, 512 U.S. 1209 (1994).

Our conclusion that General Motors' counsel's notes are protected by the work product doctrine decides this case. We need not address the question of an "at issue" waiver exception to the attorney-client privilege. Unlike the strictly federal question work product issue, the question of the possible "at issue" waiver of the attorney- client privilege turns on an interpretation of either Michigan or Missouri state law. Bedrock principles of comity and federalism suggest that federal courts should not embark upon the task of interpreting state law unless we are required to engage in such rendition. As no such requirement exists in the instant case, I respectfully decline to join those portions of either Judge Beam's or Judge Heaney's opinions addressing the possible "at issue" waiver exception to the attorney client privilege. Additionally, because the appellees did not raise in the district court the contention on appeal that General Motors waived its opinion work product protection, the assertion of such a waiver made on

---

Elwell's testimony is not comprehensive enough to serve as a substitute for the documents. As these documents are not ordinary work product, I would not decide the issue of the comprehensiveness of Elwell's testimony.

appeal need not be addressed.  See Carter v. Chrysler Corp., 173 F.3d 693, 704 n.9 (8th Cir. 1999).

HEANEY, Circuit Judge dissenting.

By allowing a litigant to assert privilege to suppress contradictory evidence, today's opinion gives a litigant free rein to make assertions contradicted by the litigant's own documentary evidence without being branded as untruthful.  The district court correctly held that this is an abuse of evidentiary privilege because it permits a party to adhere to what appears to be an unequivocal position when contradictory evidence is available but inadmissible.  I find fault with the majority's legal reasoning and with the policy implications of its opinion.  Accordingly, I respectfully dissent.

## I.  AT-ISSUE WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE

Missouri privilege and waiver law govern because Missouri has a stronger interest in the conduct of the parties in its courts than does Michigan.  Under Missouri law it is clear that GM has waived any privilege claim to the documents by putting their subject matter at issue.

## A.  Choice of Law

In diversity cases, privileges are determined according to state law.  See Fed. R. Evid. 501.  In determining which state's substantive law governs, a district court must apply the forum state's conflict of law rules.[8]  See Pritchard-Keang Nam Corp. v.

_____

[8]Although the majority suggests that a lengthy choice of law discussion may be little more than an intellectual exercise because the Bakers' claims fail under either Missouri or Michigan law, I disagree.  Missouri law and Michigan law appear to differ on what would constitute a waiver of attorney-client privilege.  Compare Kubiak v.

Jaworski, 751 F.2d 277, 281 n.4 (8th Cir. 1984). In Missouri, admissibility of evidence generally is governed by the law of the forum state, but "[n]o Missouri case law has decided what the specific choice of law rule is regarding privilege." Id.; see also Restatement (Second) of Conflict of Laws § 138 (1971).

In the past, Missouri has looked to the Restatement to provide guidance on its conflict of law questions. See Farmers Ins. Co. v. McFarland, WD 54948, 1998 WL 548738, at *12, (Mo. Ct. App. Sept. 1, 1998) (stating that Missouri has adopted "significant relationship" test of Restatement § 145 for both tort and contract actions); Atlas Intermodal Trucking Serv., Inc. v. United Fire & Cas. Co., 973 S.W.2d 174, 177 (Mo. Ct. App. 1998) ("Missouri has adopted sections 188 and 193 of the Restatement . . . in deciding choice of law issues regarding insurance contracts."); CMT Partners v. Alaiwat, 969 S.W.2d 885, 887 (Mo. Ct. App. 1998) ("When determining choice of law issues, Missouri courts apply the 'most significant relationship' test set out in Section 188 of the Restatement . . . ."). Because Missouri case law provides no clear choice of law rule with regard to privilege, it is appropriate to reference the Restatement:

> Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.

Restatement (Second) of Conflict of Laws § 139(1) (Supp. 1989).

---

Hurr, 372 N.W.2d 341, 345-46 (Mich. Ct. App. 1985) (per curiam) (holding that disclosing subject matter of communication with attorney does not waive privilege as to actual communication with the attorney), with State v. Timmons, 956 S.W.2d 277, 285 (Mo. Ct. App. 1997) (holding waiver of privilege as to communication with attorney occurs where client "plac[es] the subject matter of the privileged communication in issue in the litigation")

While the actual communications at issue here–the documents–were made in Michigan and involved a Michigan corporation, at-issue waiver of privileged communications is concerned not with the genesis and nature of the communications themselves. Rather, the question is whether a party's conduct in litigation–here, placing the contents of the documents at issue–has operated as a waiver of attorney-client privilege. It is clear that Missouri, as the forum state, has a greater interest in controlling the litigation tactics used in its court than does Michigan. Accordingly, applying Missouri's at-issue waiver law is consistent both with the Restatement and with Missouri's established rule that the forum state controls the admissibility of evidence. See Rosser v. Standard Milling Co., 312 S.W.2d 106, 110 (Mo. 1958).

## 1. Waiver of attorney-client privilege under Missouri law

In Missouri, an attorney may not testify "concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client." Mo. Rev. Stat. § 491.060 (2000). This privilege is not absolute and can be waived by the client. See Sappington v. Miller, 821 S.W.2d 901, 904 (Mo. Ct. App. 1992). By placing the subject matter of a privileged communication at issue, the client waives any claim of attorney-client privilege. See Timmons, 956 S.W.2d at 285.

In Sappington, the defendant, in her answer to a complaint requesting specific performance of a settlement agreement, claimed that she was not a party to the settlement agreement and that her attorney and her adversary's attorney had "concocted" the agreement. The appellate court held that the defendant's allegations placed the subject matter of her prior communications with her attorney at issue, such that the attorney was free to disclose these communications. Sappington, 821 S.W.2d at 904-05.

In Timmons, a criminal defendant brought a pro se motion for a continuance before the court, arguing that he needed more time to secure the presence of two

witnesses.  The trial court then questioned Timmons' attorney about whether the witnesses were necessary and where the witnesses were.  The appellate court held that Timmons' attorney could answer the questions because, by bringing his motion, Timmons had placed the otherwise privileged information held by his attorney at issue. "Because the information revealed by trial counsel was necessary for the resolution of the motion, Mr. Timmons waived the attorney-client privilege as to those communications."  Timmons, 956 S.W.2d at 285.

In the case before us, it is clear that under Missouri law GM has waived any attorney-client privilege claim to the documents.  During the litigation of this suit, GM presented two motions in limine (one for its 1993 trial, and one for the second pending trial).  Both motions sought to exclude the Ivey valuation document from this suit.  In support of its first motion in limine, GM argued that the Ivey document was irrelevant in large part because GM did not sanction the document's creation:

> [Ivey] apparently prepared the document on his own initiative.  No General Motors employee requested that he prepare the document, and he did not disseminate it to anyone at General Motors.  General Motors has never adopted its contents or used it for any purpose.
>       . . . .
>
>       . . . . The document was generated by Mr. Ivey on his own initiative, and he never showed the results reflected in the document to anyone at General Motors.  Indeed, Mr. Ivey has testified that he did not disseminate the document to anyone.  It was, rather, simply an individual intellectual exercise performed on his own.
>
>       Plaintiffs cannot provide any evidence that General Motors ever assigned, approved or adopted this document.  The only evidence is that the document was prepared by a near-entry level engineer, on his own initiative, and was not disseminated to anyone at General Motors.

(Def.'s First Mot. In Limine to Exclude "Ivey Document" at 1-2; 4-5).

-13-

In its second motion in limine to exclude the Ivey document from the pending trial, GM again distanced itself from the document:

> [T]here is no evidence that GM has <u>ever</u> adopted [the document]'s contents or used it for any purpose.
>
> . . . .
>
> . . . The memo is not addressed to anyone, and bears no indication that it was routed or copied to anyone. . . . Mr. Ivey has also testified that he does not recall sending the memo to anyone, nor does he recall anyone asking him to do such a memo.
>
> . . . .
>
> . . . The document was generated by Mr. Ivey on his own initiative, and he never showed the results reflected in the document to anyone at GM. Indeed, Mr. Ivey has testified that he did not disseminate the document to anyone. It was, rather, simply an individual exercise performed on his own.
>
> Plaintiffs nowhere provide <u>any</u> probative evidence relating to the Ivey document that GM ever assigned, approved or adopted it. The <u>only</u> evidence is that the memo was prepared by a near-entry level engineer on his own, and was not disseminated to anyone at GM. Thus, the document has no relevance in this case, and should be excluded from evidence.

(Def.'s Second Mot. In Limine to Exclude "Ivey Document" at 2-3; 7).

GM's assertions that it was not involved in the creation of the Ivey document and that the document was never disseminated among GM employees placed the contents of GM's attorneys' documents at issue, waiving the privilege. This is so because those documents, otherwise privileged, concern GM's relationship with the Ivey document, a subject matter GM put at issue by alleging it had no involvement with the Ivey document. As stated by the <u>Timmons</u> court, "once [a privilege-holder] presented the

-14-

issue to the court, [it] was not able to use the attorney-client privilege as a shield against the introduction of relevant information necessary for the court to consider in ruling on [its] motion." Timmons, 956 S.W.2d at 285.

GM argues that it did not waive its attorney-client privilege under Missouri law, citing Charles Woods Television Corp. v. Capital Cities/ABC, Inc., 869 F.2d 1155 (8th Cir. 1989). However, Charles Woods is factually distinguishable. In that case, our court, applying Missouri law, held that where witnesses talk generally about the effects of a merger but never mention a particular communication, any privilege that attached to that communication is not waived. See id. at 1162. Here, GM was doing much more than musing generally about its costs or its products; it was specifically asserting that Ivey's valuation report was not its brainchild. These pointed assertions put the contents of GM's attorneys' documents relating to the Ivey report at issue, waiving any attorney-client privilege as to those documents.

## II. WORK PRODUCT DOCTRINE

GM also disagrees with the district court's holding that the documents in question are not protected as work product. In my view, the district court's decision was not erroneous. The parties agree that work product doctrine is not a substantive privilege under Federal Rule of Evidence 501, and therefore is governed by federal law. Under Civil Rule of Procedure 26(b)(3), a party may not obtain discovery of any items prepared by another party in anticipation of litigation unless it is shown that the party seeking discovery has a substantial need for the material and the party could not obtain the substantial equivalent information without undue hardship.

The plaintiffs clearly satisfied these requirements. First, the documents were needed both for plaintiffs' motion for sanctions against GM and for impeachment at trial, and second, the plaintiffs could not obtain the substantial equivalent of the

information because Ivey and GM have consistently made assertions directly contrary to the documents.[9]

The court allowed GM to submit proposed redactions to the documents to protect any of its attorneys' mental impressions or opinions, but ordered the release of any facts contained within the documents. A memorandum written by an attorney during an interview is protected by work product. See Upjohn Co. v. United States, 449 U.S. 383, 399 (1981). Our cases suggest that so-called opinion work-product–the attorney's mental impressions–will be the subject of greater protection. See In re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973) (Duffy). This heightened security should not protect the entire document, but only portions of the document that are attorney opinions and mental impressions.

The district court in this case took the right approach. In Duffy, our court applied near absolute protection against disclosure to an attorney's written notes about a meeting with a client. See id. In Upjohn, the Supreme Court took the same view, but with a less rigid approach. The Upjohn Court merely held that a heightened scrutiny attaches to requests for an attorney to produce his or her memoranda of a witness interview, as opposed to a signed witness statement, because "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements . . . tends to reveal the attorney's mental processes." Upjohn, 449 U.S. at 399 (citations omitted). By allowing GM to suggest redactions, the district court astutely recognized that GM's attorneys' mental impressions were to remain protected in spite of the release of any factual information contained in the documents.

---

[9]Although the majority suggests that the Bakers could get substantially similar evidence from the testimony of Ron Elwell, Elwell's testimony is not comprehensive enough to render the documents sought in this case merely corroborative.

## CONCLUSION

Missouri law should govern the attorney-client privilege and waiver issue, and the privilege was clearly waived under Missouri law. Further, the documents are not protected by the work product doctrine. Although courts have been reluctant to order the release of documents that are written completely by the attorney for fear of revealing the attorney's mental processes, the district court in this case was well within its discretion in releasing the documents after permitting GM to suggest redactions. Accordingly, I would affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.