Steven **PETERSON**, Plaintiff,

v.

**MARTIN MARIETTA MATERIALS, INC., et al.**, Defendants.

**No. C14–3059–DEO**

United States District Court, N.D. Iowa, Central Division.

Signed October 13, 2015

Mark D. Sherinian, Sherinian & Hasso Law Firm, West Des Moines, IA, Sarah Ann Reindl, Reindl Law Firm, Mason City, IA, for Plaintiff.

Bernard L. Spaeth, Jr., Samuel Luke Craven, Whitfield & Eddy, PLC, Des Moines, IA, for Defendants.

## ORDER

LEONARD T. STRAND, UNITED STATES MAGISTRATE JUDGE

### I. INTRODUCTION

This case is before me on defendants' motion (Doc. No. 14) to compel discovery. Plaintiff Steven Peterson has filed a resistance (Doc. No. 18) and defendants have filed a reply (Doc. No. 19). While Peterson has requested oral argument, I find that the issues have been adequately briefed and that scheduling oral argument would serve only to delay the resolution of the motion. As such, I decline the request for oral argument. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

### II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Peterson filed this action in the Iowa District Court for Worth County on August 26, 2014. His state court petition (Doc. No. 3) includes claims brought under state and federal law based on allegations of discrimination and retaliation. The defendants include his former employer, Martin Marietta Materials, Inc. (MMM), and two individuals who are alleged to have been managerial employees of MMM during the relevant time. On September 30, 2014, the defendants filed a notice (Doc. No. 2) of removal to this court. They then filed an answer (Doc. No. 5) in which they deny liability to Peterson and raise various defenses.

Peterson served his initial disclosures on January 15, 2015. His description of the documents or other evidentiary materials in his possession, custody, or control that he may use to support his claims included the following:

Recording from coworker from attorney investigating Petition about questions being asked of employees, fear of retaliation or being "black balled" for answering questions, that Plaintiff warned the water

pump area was a safety hazard, that the accident occurred, and that then management cleaned it up, took pictures and then fired Plaintiff.

Doc. No. 14–2 at 3. The recording at issue will be referred to herein as the "Voicemail Message."

MMM later served interrogatories on Peterson, including Interrogatory No. 24, which read as follows:

Identify each Document and tangible item requested in the document request not produced in response thereto, including the date, author, addressee(s), all recipient(s), and subject matter of the Document and tangible item and the basis for withholding the Document and tangible item.

Doc. No. 14–15 at 14. Peterson's initial answer stated:

A voicemail message from a current employee is being withheld as attorney work product and also based on the fear of employee's retaliation.

*Id.* Peterson later supplemented his answer to add the following statement:

The message left by an employee of Martin Marietta was created in anticipation of litigation. Litigation was already pending and he understood that the message would likely be transmitted to Plaintiff's counsel and used by the Plaintiff and/or his counsel in preparation for litigation and/or trial. *Snyder v. Value Rent–A–Car,* 736 So.2d 780 (1999).[1]

*Id.*

MMM also served document requests that sought production of the Voicemail Message. *See, e.g.,* Doc. No. 14–16 at 12–13 (Req. No. 29). Peterson objected on grounds that he "has determined that the recording from a co-worker constitutes the Plaintiff's work-product and disclosure to the Defendants would risk retaliation of the coworker. *Id.* Counsel for MMM then made informal attempts to resolve the situation by asking Peterson's counsel to reconsider the refusal

to produce the Voicemail Message. MMM filed its motion after those efforts were unsuccessful. Peterson has submitted a transcript of the Voicemail Message for *in camera* review.

## III. DISCUSSION

Peterson raises two arguments in support of his refusal to produce the Voicemail Message. First, he contends that it is subject to the work product doctrine. Second, he contends that he is entitled to withhold the Voicemail Message because the individual who left the message is an MMM employee and is at risk of being retaliated against if MMM learns his identity.[2] MMM denies that the work product doctrine applies and further argues that if it does apply, the defendants have shown a substantial need for the information and cannot secure the substantial equivalent without undue hardship. MMM also denies that the perceived risk of retaliation against a non-party is a valid basis to prevent discovery.[3]

### A. Work Product

#### 1. Applicable Standards

Federal Rule of Civil Procedure 26 includes the following limit on the scope of discovery:

(3) Trial Preparation: Materials.

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its

---

1. As MMM points out, the case citation is incorrect. It should be *Snyder v. Value Rent–A–Car,* 736 So.2d 780 (Fla.Ct.App.1999).

2. Peterson refers to the employee as being male. Doc. No. 18–1 at 3.

3. MMM also argues that Peterson waived his objections by not asserting them timely. Based on my analysis of the merits, as set forth below, I find it unnecessary to address this argument.

case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

■ Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) codifies the work product doctrine, which "was designed to prevent 'unwarranted inquiries into the files and mental impressions of an attorney,' and recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.1987) (quoting *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)) (internal citations omitted). To withhold information as work product, "the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson, L.L.P.,* 305 F.3d 813, 817 (8th Cir.2002) (citing *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1118–19 (7th Cir.1983)). Thus, the party asserting work product protection must establish a factual basis supporting its applicability. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.,* 197 F.R.D. 620, 628 (N.D.Iowa 2000).

■ Federal courts recognize two types of work product—opinion work product and ordinary work product. Opinion work product consists of an attorney's mental impressions, conclusions, opinions or legal theories. *Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir.2000). Opinion work product enjoys almost absolute protection against disclosure, making it discoverable in only very rare and extraordinary circumstances. *Id.; see also In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977). Ordinary work product includes raw factual information and is discoverable only if the party seeking discovery has a substantial need for the information and cannot obtain it by other means. *Baker,* 209 F.3d at 1054; *see also* Fed. R. Civ. P. 26(b)(3)(A). Here, Peterson acknowledges that the recording at issue is not opinion work product but contends that it is ordinary work product. Doc. No. 18–1 at 1 n.1.

### 2. *Analysis*

■ Despite bearing the burden of establishing that the work product doctrine applies to the Voicemail Message, Peterson has come forward with no evidence supporting that claim. Indeed, despite my careful and repeated reviews of his resistance materials, I find no answers even to such basic questions as when the Voicemail Message was left and to whom it was directed.[4] The description set forth in Peterson's initial disclosures is confusing, as it refers to a "[r]ecording from coworker from attorney investigating Petition." Doc No. 14–2 at 3. That choice of words conveys virtually no information.

Peterson later stated in an interrogatory answer that the recording is of "a message left by an employee of Martin Marietta" and "was created in anticipation of litigation." Doc. No. 14–15 at 14. Peterson also wrote: "Litigation was already pending and he understood that the message would likely be transmitted to Plaintiff's counsel and used by the Plaintiff and/or his counsel in preparation for litigation and/or trial." *Id.* However, Peterson has presented no evidence supporting his allegation concerning the speaker's state of mind at the time the message was left.

Thus, the record contains no evidence of when the message was left, to whom it was directed or the speaker's motivation for leaving the message. While I can guess, from context, that the unnamed employee may have directed the message to Peterson, and that Peterson then forwarded it to his attorney, the lack of evidence renders this purely speculative. And, of course, Peterson's suggestion that the unnamed employee who left

---

4. The transcript of the Voicemail Message, which Peterson submitted for *in camera* review, does not disclose the answers to these questions.

the message did so in preparation for litigation is even more speculative.

■ In short, Peterson has not come close to making the factual showing necessary to support his claim that the Voicemail Message constitutes ordinary work product. Moreover, even if I could assume (a) that the Voicemail Message was left for Peterson, (b) that Peterson forwarded it to his attorney and (c) that the unnamed employee who left the message did so for the purpose of providing assistance to Peterson, that scenario would not give rise to a valid work product argument. The purpose of the work product privilege is to:

> promote[ ] the adversary system ... by protecting the confidentiality of papers prepared *by or on behalf of attorneys* in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) [emphasis added]; *see also Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir.1997) ("[T]he work product privilege is designed to promote the operation of the adversary system by ensuring that a party cannot obtain materials *that his opponent has prepared* in anticipation of litigation.") [emphasis added]. The Voicemail Message was not "prepared" by either Peterson or his attorney. Nor does Peterson claim that the caller was a representative or agent of his attorney. *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (work product doctrine protects material prepared by agents of the attorney). Instead, it appears to have been an unsolicited communication from a non-party to someone other than Peterson's attorney (probably Peterson). Even if Peterson then transferred that communication to his attorney, that transfer did not magically transform it into work product. *Petersen v. Douglas Cnty. Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir.1992) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir.1986)). There is no evidence Peterson's attorney (or Peterson himself at the direction of his attorney) sought out the communication or did anything to cause it to occur. Thus, even if I could make assumptions about the Voicemail Message to cure Peterson's failure to supply evidence, those assumptions would not give rise to a work product claim.

Peterson has failed to establish that the Voicemail Message constitutes ordinary work product. His work product objection must be overruled.[5]

### B. Fear of Retaliation

■ Peterson's alternative argument for withholding the Voicemail Message is that its disclosure to MMM would create a risk that MMM will retaliate against the employee who left the message. Peterson requests entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1) to protect that employee from annoyance, embarrassment, oppression, etc. Doc. No. 18–1 at 3–4.

While I appreciate Peterson's concern about his former co-worker, I find no legal basis to deprive MMM of otherwise-discoverable information because of speculation that MMM might take retaliatory action against a non-party. Peterson cites no authority for this proposition. Moreover, and as Peterson acknowledges, the MMM employee who left the message has legal protection against retaliatory conduct based on assisting or participating in an investigation, claim or proceeding. *See, e.g.*, 42 U.S.C. § 2000e–3(a); 42 U.S.C. § 12203(a); Iowa Code § 216.11.

---

5. Because the Voicemail Message is not work product, I need not address MMM's argument that it has a substantial need for the message and cannot, without undue hardship, obtain its substantial equivalent by other means. I note, however, that the circumstances present here would almost-certainly require such a finding. Based on my *in camera* review of the transcript, I assume Peterson will call the unidentified employee as a trial witness to testify about the circumstances described in the Voicemail Message. Peterson does not state otherwise. It would be fundamentally unfair for MMM to learn about the contents of the Voicemail Message for the first time during trial. Moreover, because MMM does not know the identity of the employee who left the Voicemail Message, it cannot obtain equivalent information by interviewing that employee.

If MMM is foolish enough to take retaliatory action against that employee after receiving the Voicemail Message, the employee will have ample legal remedies. I will not enter a protective order, or otherwise prohibit discovery, based on speculation that MMM might break the law.

### IV. CONCLUSION

For the reasons set forth herein, defendants' motion (Doc. No. 14) to compel discovery is **granted.** Peterson shall supplement his discovery responses to provide all requested information about the Voicemail Message (including a copy of the message) to counsel for the defendants on or before *October 27, 2015.*

**IT IS SO ORDERED.**