# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

Nos. 97-2969 and 97-4380

---

| | | |
|---|---|---|
| Erik Gundacker, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Unisys Corporation, | * | |
| | * | |
| Appellee. | * | |

---

Submitted:  June 11, 1998

Filed: August 7, 1998

---

Before BOWMAN, Chief Judge, HEANEY and LOKEN, Circuit Judges.

---

HEANEY, Circuit Judge.

In this diversity action, Erik Gundacker appeals the district court's grant of summary judgment to Unisys Corporation on his retaliation claim under the Minnesota Whistleblower Act, Minn. Stat. Ann. §§ 181.931-937 (West Supp. 1998), and the district court's finding that a document inadvertently disclosed to Unisys during discovery was privileged and had to be returned.  As part of this consolidated appeal, Gundacker and his attorney, Dale Nathan, also challenge the district court's decision to assess sanctions against them.  We affirm the district court's grant of summary

judgment and finding that the inadvertently disclosed document was privileged, reverse any sanctions levied against Gundacker, and remand for a proper determination of monetary sanctions against Nathan.

I.

For several years, Gundacker worked as a software manager in Unisys' defense business. When Gundacker was forty-two-years old, Unisys laid Gundacker off during a company-wide reduction in force (RIF). According to Gundacker, during the course of his employment with Unisys, he protested what he considered to be illegal orders by the company. Specifically, Gundacker contends that Unisys ordered or asked him to: (1) make illegal charges in a naval contract; (2) arbitrarily increase a price estimate in a naval contract; (3) submit unrealistically low bids in a naval contract; (4) begin work on a project before receiving naval approval; and (5) illegally use replacement personnel as part of a government contract when it started layoffs in November 1993.

In November 1993, when Unisys began conducting involuntary layoffs it required Gundacker's supervisor, Judith Groff, to rank employees according to the skills necessary to complete existing and future projects. After assessing Gundacker, Groff concluded that of those within Gundacker's grade position, laying off Gundacker would have the least impact. Gundacker claims that within the same comparison group, his performance review went from a 12/37 (i.e., 12th best of 37 employees) to 37/37. On December 14, 1993, Unisys relieved Gundacker of some of his managerial responsibilities.

On January 24, 1994, Unisys laid Gundacker off. Shortly before his termination, Gundacker claims that Groff wrote an internal note evidencing that Unisys fired Gundacker because he protested Unisys' allegedly illegal activity. The handwritten note stated:

2

> Prior to 15 Nov RIF - about Nov. 5 - [Gundacker] sent a letter to a number of people (Jerry, Judy, Huff, ?) Stating that the people on layoff were critical & shouldn't be let go. Caused a ruckus through Bill, etc. with the last minuteness of it. Upshot was, he was relieved of his mgm't responsibilities during week of Nov. 15 & resisted the acceptance until meeting in Dec. -- Talked to Jerry about being on probation, etc.

(Appellant's App. at 105.)

Soon after he was laid off, Gundacker brought suit against Unisys alleging that Unisys retaliated against him for protesting illegal activity. At the beginning of discovery, Unisys' lawyers inadvertently released a document to Nathan. The document contained information related to an internal investigation conducted by Unisys' lawyers to determine, in part, whether Unisys participated in illegal conduct. Upon realizing their mistake, the attorneys asked Nathan to return the document. They claimed that the document was privileged attorney work product and asked that Nathan not use it. Several days after Nathan gave the document back, Unisys' lawyers asked Nathan whether he had retained a copy. He refused to answer, and Unisys again asked Nathan to return the original and all other copies. Nathan wanted to use the document as part of a separate whistleblower claim, known as a *qui tam* action, against Unisys. The magistrate determined that the document was privileged as attorney work product. The district court agreed with the magistrate's conclusion.

After the parties agreed to a confidentiality stipulation, on January 9, 1995, the magistrate entered a protective order. Nathan repeatedly disregarded the order. For example, despite the fact that the separate *qui tam* action against Unisys was sealed entirely, Nathan continually referred to the *qui tam* action as part of Gundacker's pleadings in this case.

While Gundacker was working at Unisys, he took several cartons of internal company documents and retained several other documents that were given to him in the

course of his employment. Unisys brought a counterclaim against Gundacker requesting that all documents be returned, and that Nathan be prohibited from disclosing any information from the documents. On April 11, 1997, the parties agreed that Unisys would dismiss its counterclaim against Gundacker. Gundacker, in turn, agreed to return all Unisys documents in his possession. The parties agreed that the documents would be coded, supervised by a third party, and stored at Unisys' lawyers office with the only key placed under seal in the court file.

Under the agreement, Nathan could review documents relevant to this case, but the documents would remain under seal. Further, if Gundacker ultimately lost on appeal, Unisys would take possession of the documents. However, if Gundacker succeeded on appeal, Gundacker could seek a court order allowing him to use the documents. All parties agreed that because of the settlement agreement, Unisys' pending motion for a temporary restraining order was moot.

Nevertheless, shortly after the parties reached their settlement agreement, Nathan sent a letter to Unisys claiming that the agreement did not prevent him from sending documents to law enforcement officials. The magistrate requested that the parties be available for an April 18, 1997 telephone conference call. On April 17, 1997, Nathan sent a letter to Unisys' lawyers indicating that he would tape the telephone conference call and possibly have the media present. He also stated that he reserved the right to provide copies of the tape and letters from Unisys' attorneys to federal officials, the Lawyers Professional Responsibility Board, and the media.[1] Nathan wrote:

> Nothing less than a written order not under seal by a judge specifically prohibiting me from providing copies of the Gundacker documents to the United States Government will prevent me from providing these

---

[1]The record indicates that Nathan did, in fact, speak to at least one member of the press about this case and the separate *qui tam* action.

4

documents to the United States Government if we decide to do so. We will obey such an order if it is issued. We will also appeal that order.

(Appellee's App. at 55.)

Nathan also stated that the various judges assigned to this case were part of a cover-up and were impeding a federal investigation. On April 21, 1997, the magistrate convened a meeting between the parties to discuss the court records remaining under seal. Unisys' lawyers were concerned that Nathan would turn documents over to the United States Attorney. Nathan stated that he would only do so if he were subpoenaed but he would not ask for a subpoena. He specifically asked that the record show he would not request a subpoena, and assured Unisys that if he were subpoenaed, he would first contact Unisys.

After the conference, however, Nathan contacted an Assistant United States Attorney (AUSA) and told him about the conversation with the magistrate. The AUSA served Gundacker with a subpoena. Relying on Nathan's advice, Gundacker complied with the subpoena. Despite his assurances to the contrary, Nathan turned over the documents without first contacting Unisys, stating that he forgot the court's order and inadvertently made a mistake.

Because of their conduct, the district court assessed sanctions against Nathan and Gundacker. The district court found that Gundacker and Nathan acted in bad faith in relation to the Federal Rule of Civil Procedure 16 settlement conference and vexatiously and unreasonably multiplied the proceedings under 28 U.S.C. § 1927. The court then determined that sanctions against the two were appropriate.

In sum, the district court granted Unisys' summary judgment motion on Gundacker's whistleblower claim; found that the inadvertently disclosed document was privileged under the attorney work product doctrine; assessed $11,247.06 in sanctions

against Gundacker and Nathan, holding them jointly liable; and assessed $6,111.07 in sanctions against Nathan, individually, to reimburse Unisys for certain fees and costs. The district court also ordered that Nathan be publicly admonished in an order to be filed with the National Lawyer Regulatory Data Bank of the American Bar Association's Center for Professional Responsibility. Gundacker and Nathan appeal.

## II.

Gundacker appeals the district court's grant of summary judgment to Unisys and its finding that the inadvertently disclosed document was privileged. Both Gundacker and Nathan appeal the assessment of sanctions.

We review a district court's grant of summary judgment de novo. United States ex. rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir. 1992). In considering whether to grant summary judgment, a court examines all the "pleadings, depositions, answers to interrogatories . . . admissions on file . . . [and] affidavits." Fed. R. Civ. P. 56(c). After viewing the record in a light most favorable to the nonmoving party, summary judgment is appropriate only where there is "no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993) (citations omitted).

Gundacker first argues that Unisys retaliated against him in violation of § 181.932, subd. 1(c)[2] of the Minnesota Whistleblower Act:

---

[2]Gundacker argues that in addition to his 1(c) claim, he also alleged a 1(a) claim under the Minnesota Whistleblower Act. Subdivision 1(a) provides:

An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> . . .
>
> (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

Minn. Stat. Ann. § 181.932, subd. 1(c) (West Supp. 1998).

In determining whether an employee has been subjected to a retaliatory discharge, Minnesota courts follow the three-part, burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] See Hubbard v. United

----

> . . . .
>
> (a) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official.

Minn. Stat. Ann. § 181.932, subd. 1(a) (West Supp. 1998). Having reviewed his original complaint and several amended complaints, we conclude that Gundacker only brought suit under 1(c). Despite this issue being flagged early in the proceedings, Gundacker never asked for leave of court to amend his complaint in order to add a claim under subd. 1(a) and he has not appealed this issue.

[3]Unisys argues that rather than review Gundacker's claim as simply one of retaliation, we should analyze his cause of action under the more exacting standard applied in RIF cases. We need not address this issue because under either mode of analysis, Gundacker is unable to establish a prima facie case of retaliation.

7

<u>Press Int'l, Inc.</u>, 330 N.W.2d 428, 444 (Minn. 1983) (citations omitted). In order to make out a prima facie case of retaliation, Gundacker must prove: (1) he engaged in conduct that is protected by the statute, (2) Unisys took adverse employment action against him, and (3) a causal link between the adverse employment action and the conduct protected by the statute. <u>Id.</u>

Gundacker alleged five incidents in which he protested illegal orders. In discussing why Gundacker failed to establish a prima facie case as it relates to the first four incidents of alleged illegal activity, the district court stated:

> Plaintiff has produced no evidence . . . tending to show the [first two] incidents were a factor in his termination. . . . Even if [the] evidence [as to the third and fourth incidents] were sufficient to create a genuine issue of material fact on the causation element of plaintiff's prima facie case, the Court notes plaintiff has not shown that his actions during these two incidents are protected by the whistleblower statute. With respect to the bid, plaintiff provided no evidence he informed Unisys the low bid was illegal. He also admitted he submitted the bid, and therefore cannot show he refused the allegedly illegal order to submit it. <u>See</u> Minn. Stat. § 181.923, subd. 1(c).
>
> The evidence with respect to the work authorization issue shows plaintiff brought the problem to the attention of his superiors and the work authorization was changed to his satisfaction. Management's response to his complaint takes this incident outside the whistleblower statute. <u>See</u> <u>Morrow v. Air Methods, Inc.</u>, 897 F. Supp. 418, 421 (D. Minn. 1995) (no request to perform illegal act where management acknowledged and corrected the error employee brought to his attention).

<u>Gundacker</u>, No. 4-95-676, Mem. & Order at 6-7 & n.3. Having carefully reviewed the record, we agree with the district court's analysis concerning the first four incidents.

With respect to the fifth incident, Gundacker sent a letter to his supervisor complaining that the proposed layoffs would adversely affect his ability to complete projects under his direction. Gundacker claims that Unisys told him to use substitute personnel in place of those laid off. He asserts that he complained to Unisys that doing so would be illegal. To support his assertion, Gundacker submitted expert testimony to the effect that the following actions violate state and federal law: (1) using lower grade personnel under a government contract without first advising the government, (2) charging the government for deliveries when a contractor knows the work is incomplete or of a lower quality, and (3) billing "direct charge worker" costs to overhead. Despite the introduction of expert testimony, the district court concluded that because Gundacker did not refuse Unisys' order, as required by subd. 1(c) of the whistleblower act, he failed to establish a prima facie case. We agree.

In his deposition and supplemental memorandum opposing summary judgment, Gundacker admitted that he used people that were not originally bid for the particular task and that he "used other personnel under protest because there was no other option." In his appellate brief, Gundacker stated that "he had no choice but to use replacement personnel." Because Gundacker did not refuse Unisys' order to use substitute personnel, the district court properly granted summary judgment in favor of Unisys.

Gundacker next argues that because the crime-fraud exception applied, the district court erred by determining that the inadvertently disclosed document was privileged under the attorney work product doctrine. We review the district court's determination that a document is privileged as attorney work product for an abuse of discretion. See Zar v. South Dakota Bd. of Exam'rs of Psychologists, 976 F.2d 459, 463-64 (8th Cir. 1992).

The work product privilege operates to ensure that an opponent cannot secure materials that an adversary has prepared in anticipation of litigation. Pittman v. Frazer,

129 F.3d 983, 988 (8th Cir. 1997) (citation omitted).  The doctrine allows for discovery of ordinary work product[4] when there is a demonstrated substantial need and an inability to otherwise procure the relevant material without undue hardship.  See id. (citations omitted).  In rare circumstances, a party opponent is permitted to discover opinion work product.[5]  See id. (citations omitted).  Although disclosure to an adversary ordinarily waives work product protection, there must be an intention that the opposing party see the work product.  See id. (citations omitted).[6]  Under the crime- fraud exception, "[a]ttorney-client communications lose their privileged character when the lawyer is consulted not with respect to past wrongdoings but rather to further a continuing or contemplated criminal fraud or scheme."  In re Berkley & Co., 629 F.2d 548, 553 (8th Cir. 1980) (citations omitted).

Unisys claims that the inadvertently disclosed document was generated as part of an internal investigation and that the data contained within the document was otherwise readily discoverable.  Unisys also claims that, at most, the document was evidence of an alleged past crime or fraud and was produced, in part, to investigate Gundacker's claims in anticipation of litigation.[7]  Having carefully reviewed the record, we hold that the district court did not abuse its discretion in finding that the document was privileged under the attorney work product doctrine; that the crime-fraud exception

---

[4]Ordinary work product includes such items as photographs and raw information. See Pittman, 129 F.3d at 988 (citations omitted).

[5]Opinion work product includes conclusions, mental impressions, opinions, and legal theories concerning the litigation.  See Pittman, 129 F.3d at 988 (citations omitted).

[6]Both parties agree that the document was ordinary work product and inadvertently disclosed.

[7]There is also evidence in the record suggesting that Unisys generated the document as part of a voluntary compliance program with the Department of Defense's Criminal Investigative Service.

does not apply; and that Gundacker should have obtained the information he sought through the normal channels of discovery.[8]

Finally, Gundacker and Nathan appeal the district court's assessment of sanctions. Because a notice of appeal had already been filed in this case, we must first determine whether the district court had jurisdiction to assess sanctions. Generally, a notice of appeal divests the district court of jurisdiction. See Liddell v. Board of Educ., 73 F.3d 819, 822 (8th Cir. 1996) (citations omitted). Nevertheless, because the issue of sanctions was not before this court at the time Gundacker originally appealed, the district court properly decided whether sanctions were appropriate. See Perkins v. General Motors Corp., 965 F.2d 597, 599 (8th Cir. 1992) (citations omitted) (because sanctions are collateral to the merits of the case, sanctions may properly be considered by the district court even when the merits are no longer before it).

The district court assessed sanctions under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 16(f), which we review for an abuse of discretion. See Hill v. St. Louis Univ., 123 F.3d 1114, 1121 (8th Cir. 1997) (citation omitted). Under § 1927, we must determine whether the district court abused its discretion in making the

---

[8]Shortly before oral argument, Nathan filed a motion seeking to compel Unisys to disclose whether it provided the government with a copy of the inadvertently disclosed document. In light of the above discussion, we deny Nathan's motion.

objective finding that Nathan unreasonably and vexatiously multiplied the proceedings.[9] See <u>O'Connell v. Champion Int'l Corp.</u>, 812 F.2d 393, 395 (8th Cir. 1987).

Under Rule 16(f),[10] we must decide whether, in assessing sanctions, the district court abused its discretion in finding that Gundacker and Nathan failed to obey a pretrial order and generally failed to participate in good faith. We must also determine

---

[9]Under § 1927,

> [a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

[10]Rule 16(f) states:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion, or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f).

12

whether, in exercising its inherent powers, the district court appropriately assessed punitive sanctions against Gundacker and Nathan under Rule 16(f).

The record is clear that Nathan unreasonably and vexatiously multiplied the proceedings and generally acted in bad faith. He disobeyed court orders, violated his duty as an officer of the court by making false representations, spoke to at least one member of the press concerning this and an ongoing, sealed *qui tam* action, and made various threats directed at the court. The assessment of sanctions against Nathan was certainly appropriate.[11]

We are not convinced, however, that Gundacker should be sanctioned because of Nathan's reckless behavior. Having carefully reviewed the record, we believe that it was an abuse of discretion to assess sanctions against Gundacker. At worst, Gundacker did not prevent his lawyer from acting recklessly, and we will not impute liability to Gundacker because his attorney decided to "run wild."

## III.

We affirm the district court's grant of summary judgment and finding that the inadvertently disclosed document was privileged, reverse any sanctions levied against Gundacker, and remand for a proper determination of monetary sanctions against Nathan in light of our above discussion.[12]

---

[11]In light of the above discussion, we also conclude that the district court did not abuse its discretion in ordering that Nathan be publicly admonished in an order to be filed with the National Lawyer Regulatory Data Bank of the American Bar Association's Center for Professional Responsibility.

[12]Because Nathan and Gundacker are no longer jointly liable for the sanctions assessed against them, the district court should determine what level of sanctions against Nathan are appropriate. We note that we do not disturb the district court's individual assessment of costs and fees against Nathan to be paid to Unisys under 28

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

U.S.C. § 1927.