**F. MaDene FALKNER, as Administratrix of the Estate of Steven Matthew Falkner, Deceased, Kevin B. Falkner, Individually, and Bethany A. Falkner, Individually, Plaintiffs,**

**v.**

**GENERAL MOTORS CORPORATION, a Corporation, Defendants.**

**General Motors Corporation, Defendant and Third–Party Plaintiff,**

**v.**

**Kevin B. Falkner, Individually, and Bethany A. Falkner, Individually, Third–Party Defendants.**

No. CIV 3–99–CV–80213.

United States District Court, S.D. Iowa, Central Division.

April 18, 2001.

Steven J. Crowley, Darwin Bunger, Crowley & Bunger, Burlington, IA, for plaintiffs.

Patrick L. Woodward, McDonald Stonebraker Cepican & Woodward PC, Davenport, IA, for Kevin B. Falkner and Bethany A. Falkner.

Thomas D. Waterman, Jed E. Brokaw, Lane & Waterman, Davenport, IA, Mary E. Bolkcom, Mickey W. Greene, Hanson Marek Bolkcom & Greene Ltd., Minneapolis, MN, for defendants.

### ORDER ON GENERAL MOTORS' MOTION TO COMPEL

BREMER, United States Magistrate Judge.

This matter comes before the court on Defendant and Third–Party Plaintiff's, General Motors Corporation (GM), resisted Motion to Compel production of statements of Plaintiffs and Third–Party Defendants, Kevin and Bethany Falkner (Falkners), (Clerk's No. 44).

## I. BACKGROUND FACTS

This case arises out of the death of the Falkners' 3–year–old child, Steven Falkner, which occurred outside the Hickory Grove Community Church in Ottumwa, Iowa, on January 7, 1998. While the Falkners were in the church, Steven climbed into the family's 1986 Oldsmobile Regency 98, in the church parking lot. Steven's mother, Bethany Falkner, had left the car's engine turned on. Steven leaned out a side window, and his knee pushed down the power window switch causing the window to close on his throat. Steven died as a result of injuries.

On January 12, 1998, Jerry Cook, an employee of the Falkner's liability insurance carrier, American Family Insurance Company, recorded the statement of Kevin Falkner, Steven's father. Within months of Steven's death, GM hired an investigator to interview witnesses in Ottumwa and investigate potential liability.

On February 2, 1999, American Family prepared the transcript of Kevin's January 12, 1998, statement. On February 23, 1999, Cook recorded Bethany Falkner's statement. The next day, American Family prepared the transcript of Bethany's statement.[1]

The Falkners and the Estate of Steven Falkner (hereinafter Estate) filed a products liability lawsuit against GM on December 29, 1999. Their counsel is Steven Crowley. In response to discovery requests from GM, the Estate and the Falkners denied that the Falkners had made recorded statements about the accident. On January 31, 2000, GM filed a counterclaim against the Falkners seeking indemnity in the event GM is determined to be liable to the Estate and the Falkners.

During Kevin Falkner's deposition taken on January 17, 2001, Patrick Woodward, defense counsel for the Falkners in the counterclaim suit, stated that a representative of the Falkners' liability insurance carrier had recorded telephonic statements of both Kevin and Bethany Falkner. At the deposition, when asked for a copy, Woodward gave a copy of the statements to Crowley. However, Woodward refused to provide copies of the statements to GM's counsel. The Falkners have withheld the statements from GM, claiming they are protected by work-product privilege, because the Falkners' liability insurance carrier recorded the statements in anticipation of litigation.

The statements have been provided to, and reviewed by, the court *in camera.*

## II. DISCUSSION

 In a diversity action the court applies federal law to determinations of work-product claims. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir.2000) (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir.1987)); *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 627 (N.D.Iowa 2000). Because the Falkners assert the work-product privilege as a bar to discovery, they bear the initial burden of establishing a factual basis for their assertion. *See St. Paul Reinsurance*, 197 F.R.D. at 627. The party asserting the privilege meets this burden by providing the reviewing court with a detailed privilege log and explanatory affidavit of counsel setting forth a factual basis for the privilege. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir.1997). If the court concludes the Falkners successfully asserted the work-product privilege over their statements, the burden shifts to the party compelling discovery to establish "substantial need" and "undue hardship" in obtaining the privileged materials. FED. R. CIV. P. 26(b)(3); *see St. Paul Reinsurance*, 197 F.R.D. at 628.

---

1. During Kevin Falkner's deposition on January 17, 2001, his attorney stated that Cook took Kevin's statement on January 12, 1998, and Bethany's statement on February 23, 1999. (K. Falkner Dep. at 5.) The captions on the Falkners' transcribed statements corroborate these dates.

The parties' pleadings, however, indicate Bethany gave her statement on January 12, 1998, and Kevin gave his on February 23, 1999. *See* Mem. Support Mot. Compel at 4 (citing K. Falkner Dep. 1–17–01); Bolkom Aff. at 2 (referring to K. Falkner Dep. 1–17–01); Mem. Res. Mot. Compel at 6 (stating interview with B. Falkner taken within days of Steven's death, and interview of K. Falkner taken more than a year later).

The court finds Kevin gave his statement on January 12, 1998, and Bethany gave her statement on February 23, 1999.

The court's examination of the statements and claims of work-product privilege is guided by the purposes of the doctrine set out in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *See Simon*, 816 F.2d at 400; FED. R. CIV. P. 26(b)(3). The work-product doctrine was designed to prevent unwarranted inquiries into attorney's files and mental impressions. *Simon*, 816 F.2d at 400 (quoting *Hickman*, 329 U.S. at 510, 67 S.Ct. 385). The doctrine furthers the goals of the adversarial system by "ensuring that a party cannot obtain materials that his opponent has prepared in anticipation of litigation." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir.1997); *See Hickman*, 329 U.S. at 510–11, 67 S.Ct. 385. Yet, the "[w]ork product rule does not come into play merely because there is a remote prospect of future litigation." *St. Paul Reinsurance*, 197 F.R.D. at 631; *see also Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D.Minn. 1986) ("The inchoate possibility, or even the likely chance of litigation, does not give rise to the privilege.").

The court applies the Eighth Circuit Court of Appeals' test used to determine when the parties "anticipate litigation":

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon*, 816 F.2d at 401 (citations omitted).

The doctrine encompasses ordinary work product, which includes "raw factual information." *Baker*, 209 F.3d at 1054. A party may overcome a claim of ordinary work product by showing a substantial need and that the substantial equivalent of the information cannot be procured without undue hardship. *Id.; Pittman*, 129 F.3d at 988; *see* FED. R. CIV. P. 26(b)(3).

The court acknowledges the complexities of defining the work-product privilege as it pertains to insurance claims files. Although not determinative, factors such as who prepared the documents, the nature of the documents, and the time the documents were prepared are relevant in the analysis. *See Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542, 542 n. 42 (N.D.W.Va. 2000) (stating no bright-line test determines when investigation is conducted in ordinary course of business and when it becomes in anticipation of litigation). Additionally,

> [C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection.

*Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. CIV.A.99–3759, 2000 WL 1145825, at *2 (E.D.La. Aug.11, 2000). Moreover, if the party asserting the privilege cannot make a factual showing that the primary purpose of the insurance investigation was in anticipation of litigation, the court may conclude that the investigation was conducted in the ordinary course of investigating a potential insurance claim. *See Holton v. S & W Marine, Inc.*, No.CIV.A.00–1427, 2000 WL 1693667, at *3 (E.D.La. Nov.9, 2000) (stating "Insurance companies regularly take statements from witnesses during the routine adjustment of a potential insurance claim"; holding defendants' assertions—that prudent parties anticipate litigation and act with that possibility in mind—did not protect statements from discovery absent showing that investigations were conducted primarily for purposes of future litigation and outside ordinary course of investigating potential insurance claim).

While ordinary work product is often that of an attorney, "the concept of work product is not confined to information or materials gathered or assembled by a lawyer." *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir.1977). The court also notes, however, that an insurance adjustor attempting to ascertain the facts surrounding an accident, is not in the same position as an

attorney considering legal theories. *See Holton,* 2000 WL 1693667, at \*2.

## A. Work–Product Privilege

■ The Falkners argue that their statements should receive work-product protection because they were taken for use during litigation. (Mem. Res. Mot. Compel at 9.) The court disagrees as to Kevin Falkner's statement, which was taken just five days after the accident. Nothing indicates that the American Family Insurance employee, Jerry Cook, who took the Falkners' statements was an attorney, or was acting on behalf of an attorney. The Falkners have failed to allege specific facts showing that on January 12, 1998, the insurer's investigation was primarily for a purpose other than the ordinary coverage investigation and negotiation with an insured. *See St. Paul Reinsurance,* 197 F.R.D. at 638. In the absence of such facts, the court may conclude the Falkner's insurer was merely investigating the factual basis for coverage under the Falkner's policy, which is part of the insurer's ordinary business to determine the extent and availability of coverage. *See id.* at 637–38.

No evidence in the record indicates Kevin Falkner was under any threat of suit or had retained counsel in contemplation of filing suit. In fact, there exists information to the contrary. First, the death of Steven Falkner was ruled an accident by local authorities. Second, Kevin Falkner made his statement to his insurer just five days after the accident. Third, the court's *in camera* review of Kevin's statement shows the discussion focused primarily on coverage issues. Additionally, Kevin made representations in an interview published January 21, 1998, in the *Ottumwa Courier* that he did· not intend to sue. The Falkners did not file suit until almost two years after the accident and even then, American Family Insurance was not involved in the case until GM asserted its counterclaim on January 31, 2000. The totality of the circumstances surrounding the taking of Kevin's statement indicate the statement was taken in the ordinary course of business of American Family Insurance. The statement falls outside the work-product privilege, and shall be promptly produced to counsel for GM.

■ However, Bethany Falkner's statement was not taken close in time to the incident, but more than one year later. It follows that the primary purpose of Bethany's statement was far less likely than her husband's to concern discussion of insurance coverage for their son's medical and funeral expenses.

Within months of Steven's death, GM sent an investigator to Ottumwa to interview witnesses and investigate liability issues. On February 2, 1999, more than a year after Kevin's statement was taken, American Family Insurance transcribed his statement. In the next 22 days, the insurer recorded and transcribed Bethany's statement. Bethany was the person responsible for leaving the car running in the .parking lot, thus enabling the power windows. (Bolkom Aff. at 74, 81.) In light of this factual situation, and the nature of Bethany's statement, the court determines her statement can fairly be said to have been prepared or obtained because of the prospect of litigation. *See Simon,* 816 F.2d at 401. The court holds the work-product privilege applies to Bethany Falkner's statement.

## B. Waiver

GM next argues that Bethany Falkner waived any work-product privilege when she disclosed her statements to Steven Crowley, the attorney representing her as Plaintiff in the underlying action against GM. The Falkners counter that Bethany's statement is her own and thus was provided under Federal Rule ·of Civil Procedure 26(b), which permits parties to obtain statements they previously made concerning the action or its subject matter without the required showing. GM recognizes the statement was Bethany's, but the company argues disclosure of the statement to Crowley constituted disclosure to an adverse party because Crowley also represents the Estate.

■ "Disclosure to an adversary waives work product protection as to items actually disclosed." *Pittman,* 129 F.3d at 988. Disclosure to an adversary, however, does not

waive work-production protection, unless the disclosing party intends that the opposing party see the work product. *Gundacker v. Unisys. Corp.*, 151 F.3d 842, 848 (8th Cir. 1998). If the party who made the disclosure actually intends the opposing party to see the work product, the disclosing party cannot subsequently claim protection for the documents. *See St. Paul Reinsurance*, 197 F.R.D. at 639.

■ The court agrees with GM's statement of the law, but concludes that the facts in this case do not support a waiver of work-product protection. GM has not established that the Estate is an adversary or opposing party to Bethany Falkner. GM has not joined the Estate in its counterclaim against the Falkners, nor has GM shown how the Estate and Bethany would otherwise have adverse interests. GM cites no authority, and the court's independent research has not found any case law, to support the argument that an adverse relationship exists, under the circumstances of this case, between the Estate and Bethany. If the Estate and the Falkners recover damages in their products liability suit against GM, the company will seek indemnity from the Falkners in its counterclaim. Whether or not GM prevails in the counterclaim, the amount awarded to the Estate will be unaffected. Furthermore, GM has not shown that Bethany intended GM to see the work product. The court holds that Bethany has not waived the protection of the work-product privilege.

## C. Substantial Need

Even though, as the court found above, Bethany Falkner's statement is ordinary work product, GM may obtain her statement if it demonstrates a substantial need for the statement and that the substantial equivalent of the information cannot be procured without undue hardship. In support of its contention that a substantial need exists, GM cites the contradictory versions of the incident procured through discovery as well as the period of time that elapsed between Steven's death and the filing of the lawsuit. GM argues that such contradictions are a result of faulty or faded memories of witnesses due to the time lapse.

■ The court adheres to the Eighth Circuit's determination that witness statements are generally not discoverable if the witness is available to the opposing party. *Baker*, 209 F.3d at 1054. The record indicates GM has deposed Bethany Falkner and received other discovery from her. Therefore, Bethany's statement would be merely cumulative and corroborative evidence. The record indicates GM conducted its own investigation within months of the incident. Steven Crowley, attorney for the Falkners as Plaintiffs, provided GM with videotape interviews of the Falkners taken subsequent to the accident. (Mem. Res. Mot. Compel at 10.) In addition, GM obtained Bethany Falkner's journal notes that begin on February 26, 1998, a little over a month after the incident. (Mem. Support Mot. Compel Ex. A at 82.) Finally, GM received written responses to its interrogatories, and conducted a deposition of Bethany Falkner on January 17, 2001. (Mot. Compel at 7–8; *see also* Bolkom Aff.)

The court concludes GM has not demonstrated a substantial need for Bethany's statement, because substantially equivalent information can be procured by other means. In reaching its conclusion, the court does not find GM's argument concerning contradictory versions of the incident persuasive in light of the fact that, "A party [also] does not demonstrate substantial need when it merely seeks corroborative evidence." *Baker*, 209 F.3d at 1054 (citing *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C.Cir.1997) (no substantial need when documents sought would merely reinforce known inconsistencies)). Because GM has not established a substantial need, the court need not decide whether or not the substantial equivalent of the information can be procured without undue hardship.

## III. Conclusion

The court **denies in part and grants in part** GM's Motion to Compel Production (Clerk's No. 44).

The court holds that Bethany Falkner's statement to American Family Insurance

Company on February 23, 1999, is ordinary work product entitled to protection under the work-product privilege. The court, therefore, declines to order the Falkners to provide Bethany's February 23, 1999, statement to GM.

The court holds that Kevin Falkner's statement recorded on January 12, 1998, is not protected by the work-product privilege. The Falkners have not made an adequate factual showing that the primary purpose of taking the statement was in anticipation of litigation. The court orders the Falkners to promptly provide Kevin's January 12, 1998, statement to GM.

IT IS SO ORDERED.