**PEPSICO, INC., Plaintiff,**

v.

**BAIRD, KURTZ & DOBSON, L.L.P., Defendants.**

**No. 4:02MC36AGF/SNL.**

United States District Court, E.D. Missouri, Eastern Division.

April 5, 2002.

Rebecca R. Jackson, Partner, David J. Massa, Partner, Daniel R. O'Neill, Partner, Bryan Cave LLP, St. Louis, MO, Roger Pascal, Thomas B. Quinn, Robin M. Spencer, John C. Martin, Schiff and Hardin, Chicago, IL, for petitioner.

Mark H. Levison, Amy E. Marchant, Lathrop and Gage, St. Louis, MO, Timothy K. McNamara, Patrick L. Kenney, Lathrop and Gage, Kansas City, MO, Eric M. Trelz, James P. Martin, Polsinelli and Shalton, St. Louis, MO, William F. Dolan, Francis J. Higgins, John W. Rotunno, Erik F. Dyhrkopp, Bell and Boyd, Chicago, IL, for respondents.

## *MEMORANDUM*

LIMBAUGH, Senior District Judge.

This matter is before the Court on the amended objections filed by Marion Pepsi–Cola Bottling Co. (Marion) and Baird, Kurtz & Dobson (BKD) to the order recently entered by United States Magistrate Judge Audrey G. Fleissig (# 9) pertaining to document and deposition subpoenas served by plaintiff Pepsico upon BKD. Pursuant to Rule 72(a) F.R.Civ.P., this Court maintains jurisdiction to review this appeal from the said discovery order entered by Magistrate Judge Fleissig.

This discovery matter concerns a lawsuit filed in Illinois. Movant Pepsico and Marion are parties in an action entitled *Pepsico, Inc. v. Marion Pepsi–Cola Bottling Co.*, Case No. 00–229–DRH, currently pending in the United States District Court for the Southern District of Illinois (East St. Louis courthouse) before the Honorable David R. Herndon.[1] On or about January 2 and 17, 2002

---

1. The pleadings indicate that a majority of pre-    trial matters have been referred to and adjudicat-

Pepsico served upon BKD, within the Eastern District of Missouri, Eastern Division, a document subpoena and a Rule 30(b)(6) deposition subpoena. The document subpoena sought a variety of documents to be produced by January 15, 2002. Marion and BKD served Pepsico with objections to the document subpoena on January 14, 2002. The deposition subpoena sought the deposition of person(s) most knowledgeable about the documents listed in the document subpoena; the deposition scheduled for January 29, 2002. Marion and BKD served Pepsico with objections to the deposition subpoena on or about January 24–25, 2002.

Following multiple telephone conversations among counsel for the interested parties regarding this discovery dispute, Pepsico agreed to narrow the scope of the document and deposition subpoenas. Pepsico agreed to limit BKD's document production to only those documents responsive to Request Nos. 4 and 5 of the document subpoena, which related to BKD's process/quality control assessment work for Marion, and to limit the Rule 30(b)(6) subpoena to the same subjects.

Marion and BKD persisted in objecting to the now limited scope of the subpoenas on the grounds of privilege and the work product doctrine. Due to a quickly approaching discovery deadline in the underlying litigation, Pepsico filed an emergency motion to compel in the United States District Court for the Eastern District of Missouri, Eastern Division. On January 28, 2002 the motion was assigned to United States Magistrate Judge Audrey G. Fleissig for review and adjudication.[2]

A hearing was held on the matter before Magistrate Judge Fleissig on January 31, 2002.[3] On February 11, 2002 Magistrate Judge Fleissig entered her order granting the motion to compel (# 9). The documents at issue relate to quality control reviews, assessments, and related workpapers and communications (regarding Marion's bottling plant operations) prepared by BKD in its professional capacity as Marion's public accountant. Marion and BKD asserted that these documents were protected by the accountant-client privilege, self-critical analysis privilege, and the work product doctrine. Although she held that Illinois law primarily applied to the issue of privilege[4], she found that neither Missouri nor Illinois' statutory accountant-client privilege laws afforded protection to the subpoenaed documents. She further found that the work-product doctrine, pursuant to Rule 26 F.R.Civ.P., also did not protect these same documents from production. Finally, she concluded that even if the documents had been protected by with privilege or the work product doctrine, this protection had been waived. She ordered that all documents responsive to document request Nos. 4 and 5 of the document subpoena be produced by February 15, 2002, and unless agreed to otherwise, a BKD representative appear for deposition no later than February 19, 2002. Marion and BKD's motion to quash the subject subpoenas was denied.

On February 14, 2002 Magistrate Judge Fleissig stayed her February 11th order to February 27th so as to allow the filing of objections to her order with the district court. By order of this Court on February 27, 2002, the stay was extended to March 6, 2002 for the filing of objections; and to March 15, 2002 for the filing of responses to any objections filed therein. Court Order # 17.[5]

As of today's date, all interested parties have filed their briefs in connection with the Magistrate Judge's order of February 11, 2002 and this matter is now ripe for review by this Court pursuant to Rule 72(a) Fed. R.Civ.P.

---

ed before United States Magistrate Judge Gerald B. Cohn.

2. In order to facilitate the resolution of this discovery dispute, a miscellaneous case was opened: 4:02MC36AGF.

3. Transcript of the hearing has been filed and is part of the court record.

4. At the hearing counsel for all interested parties appeared to favor the application of Missouri law to the issue of privilege.

5. On March 19, 2002 BKD was granted leave to file a reply memorandum.

In diversity cases, federal courts must look to state law, not federal law, in determining the existence and scope of an asserted privilege. Rule 501 F.R.E.; *Pamida, Inc. v. E.S. Originals*, 281 F.3d 726 (8th Cir.2002); *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir.2000); *Pritchard–Keang Nam Corp. v. Jaworski, et al.*, 751 F.2d 277, 281, n. 4 (8th Cir.1984); *Cervantes v. Time, Inc.*, 464 F.2d 986, 990, n. 5 (8th Cir.1972); *Urban Outfitters v. DPIC Companies*, 203 F.R.D. 376, 378 (N.D.Ill. 2001); *Commercial Union Ins. Co. of America v. Talisman*, 69 F.R.D. 490, 491 (E.D.Mo. 1975). However, Rule 501 fails to specify which state law controls; i.e. which state's privilege rules prevail. Pursuant to the *Erie* doctrine [6], a federal court sitting in diversity must apply the forum state's choice-of-law rules. *Pritchard–Keang Nam Corp.*, at 281, n. 4; *Cervantes*, at 990,n. 5; *see also, Klaxon Company v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Missouri courts have yet to definitively decide which specific choice-of-law rule applies to privilege issues. *Pritchard–Keang Nam Corp.*, at 281, n. 4; *see also, Baker v. General Motors Corp*, at 1057 (Heaney, J. *dissent*).

The Eighth Circuit has interpreted twice the same Missouri Supreme Court case slightly differently when addressing the applicability of Missouri's choice-of-law rules to privilege issues. In *Cervantes, supra.*, the Court stated that "Missouri seemingly adheres to the generally accepted principle that the admissibility of evidence is governed by the law of the State where the testimony is to be heard.". The Court cited *Rosser v. Standard Milling Co.*, 312 S.W.2d 106, 110 (1958) in support of this finding. Thus, in *Cervantes*, where a deposition was being taken in New York for use in a libel action pending in Missouri, the Court found that New York's reporter's confidential source privilege afforded no protection to the reporter witness since Missouri did not recognize such a privilege. However, in *Pritchard–Keang Nam Corp., supra.*, the Court stated that even though no Missouri court had decided which specific choice-of-law rule governed privilege issues, "[n]evertheless, the general rule is that the law of the forum governs admissibility .of evidence." Again, the Court cited to *Rosser, supra.* in support. Thus, in *Pritchard–Keang Nam Corp.*, where documents were being sought in connection with an SEC investigation for use in a diversity action filed in Missouri, the Court determined the existence and application of the "crime-fraud" exception to the attorney-client privilege under Missouri law. Consequently, it appears that a federal court sitting in diversity in Missouri, when faced with the issue of privilege, turns to the law of the State wherein the underlying action is filed and the disputed discovery is going to be used (or not used as the case may be).[7]

More recently, Missouri courts have shown greater reliance on the Restatement for guidance on conflict-of-law questions. Missouri has adopted the "most significant relationship" test of Restatement (Second) of Conflict of Laws, § 145 for both tort and contract actions; and §§ 188 and 193 for insurance contract actions. Similarly, Restatement (Second) of Conflict of Laws, §§ 138 and 139 provides for the "most significant relationship" test when addressing conflict-of-law questions regarding evidence and privileged communications.

In the present case, documents are sought from a Missouri corporate entity for use in a federal court sitting in Illinois wherein jurisdiction is based on both federal question jurisdiction (alleged unconstitutionality of an Illinois statute) and diversity of citizenship (state claims apparently based on both New York and Illinois law). The defendant is a Missouri corporation with its principal place of business in Illinois (the bottling plant which is the subject of the underlying litigation).[8] BKD is licensed both in Mis-

---

6. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

7. This observation is further supported by the recent case of *Pamida, supra.* wherein the Eighth Circuit affirmed the Minnesota district court's application of Nebraska's waiver and privilege rules to discovery sought in Minnesota for use in an indemnification lawsuit filed in Nebraska.

8. Plaintiff is a North Carolina corporation with its principal place of business in New York.

souri and Illinois. Although BKD's main office is in Missouri and the documents in question were primarily generated in Missouri, the documents in question concern on-site audits and evaluations of the plant facility operations in Illinois. Upon application of the "most significant relationship" test and consideration of Missouri caselaw, this Court finds that Illinois law governs the existence and scope of the accountant-client privilege.

### Accountant–Client Privilege

■ Under Illinois law, licensed certified public accountants cannot be compelled by any court to divulge confidential information obtained from their clients while acting in their capacity as a public accountant. *Armour Int'l Co. v. Worldwide Cosmetics*, 689 F.2d 134, 135 (7th Cir.1982); *Palmer v. Fisher*, 228 F.2d 603, 608 (7th Cir.1955); *Western Employers Ins. Co. v. Merit Ins. Co.*, 492 F.Supp. 53, 54–55 (N.D.Ill.1979); *In re October 1985 Grand Jury No. 746*, 124 Ill.2d 466, 530 N.E.2d 453, 125 Ill.Dec. 295 (Ill.1988); *FMC Corp. v. Liberty Mutual Ins.Co.*, 236 Ill.App.3d 355, 603 N.E.2d 716, 177 Ill.Dec. 646 (Ill.App.1992). The Illinois statutory accountant privilege states: "A licensed certified public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a public accountant." Ill.Rev.Stat. ch. 225, § 450/27 (2001).[9] Illi-

nois courts have routinely held that the accountant privilege is personal to the accountant, not the client; i.e. only the accountant may assert it or waive it. *Armour Int'l Co.*, at 136; *Western Employers Ins.*, at 55; *FMC Corp.*, 603 N.E.2d. at 717; *see also, In re American Reserve*, 1991 WL 21201 (N.D.Ill. 1991); *In re American Reserve*, 1990 WL 208679 (N.D.Ill.1990); *Capitol Federal Savings of America v. Geldermann and Co.*, 1987 WL 7270 (N.D.Ill.1987).[10]

■ In addition, case law further establishes that the determining factor for applying the privilege is whether the information was received **in confidence** by the accountant acting in his/her capacity as a public accountant.[11] The Illinois Supreme Court has held that the type of information protected by the Illinois accountant privilege is information received in confidence from the client. *In re October 1985 Grand Jury*, 125 Ill.Dec. 295, 530 N.E.2d. at 457. Nothing in the statute limits its application only to financial records; only to any information received in confidence in the course of the accountant's work for the client. "The *October* decisions provide an exception to the privilege as it relates to tax returns and accountant's workpapers and information necessary to prepare such returns . . . [we] do not believe that it [the exception to the privilege] may be extended to an accountant

---

**9.** Most federal and state caselaw citing to the Illinois accountant privilege will cite to Ill.Rev. Stat. ch.111, § 5533. As of 2001, the Illinois Public Accounting Act had been transferred from ch.111 to ch.225, § 450/.01 *et. seq.* and § 5533 was changed to § 450/27. Furthermore, in 2001 certain amendments were made; e.g. as to § 450/27 the words "licensed certified" was added making the sentence read "A licensed certified public accountant shall not be required . . ." instead of simply "A public accountant shall not be required . . .".

**10.** Although the Court prefers not to rely upon unpublished decisions, since the caselaw on Illinois' accountant privilege is so scant, the Court finds these decisions to be helpful in reviewing the statutory privilege.

**11.** Pepsico appears to also argue that BKD is not entitled to the privilege because it was not acting as a public accountant when providing auditing and quality control assessment services. The accountant privilege statute simply provides that

any "licensed certified public accountant" is entitled to the privilege if two conditions are met: 1) information is received in confidence; and 2) such information is obtained through his or her capacity as a public accountant. The Illinois Accounting Act defines "licensed certified public accountant" as "any person licensed under this Act." 225 ILCS 450/.03(b)(2001). The evidence before this Court is that BKD is a licensed certified public accounting firm under Illinois law. The accountant privilege statute does not limit the protection to only "financial services". Furthermore, Marion and BKD have put forth undisputed evidence that the accounting industry's professional standards association clearly provides that the professional services provided by accountants are no longer strictly limited to the generation of financial and/or tax records, but now include a wide range of disciplines, including consultations, advisory services, and product services. There is no evidence before this Court that at any time BKD was not acting in its professional capacity as a public accountant when rendering services for Marion.

whose limited task is to perform an audit for the client." *FMC Corp.*, 177 Ill.Dec. 646, 603 N.E.2d. at 718.

Illinois caselaw focuses upon the issue of confidentiality, not the subject matter of the documents. To establish parameters for the privilege, the *October 1985 Grand Jury* Court recognized four (4) factors to be considered:

(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communication must be *greater than the benefit* thereby gained for the correct disposal of litigation.

*In re October 1985 Grand Jury*, 530 N.E.2d. at 457. The Court is only concerned here with whether the documents in question held by BKD "originated in a confidence".

■ The pleadings before this Court filed by Marion and BKD establishes that the documents in question were generated by BKD in its capacity as Marion's public accountant. Furthermore, Marion and BKD assert that these documents not only contain confidential financial information but that they contain information regarding Marion's bottling plant operations meant only for Marion and BKD to consider. The evidence shows that the assessments were received, reviewed and used by Marion's top management personnel, and then destroyed by Marion. The only one to keep copies of these assessments is BKD. Pepsico has not established that these assessments and evaluations were generated with the reasonable expectation that they would be disclosed to third parties.

Thus, the evidence before this Court sufficiently demonstrates that BKD has asserted repeatedly the privilege, and that the documents in question were generated by BKD in its capacity as Marion's public accountant. Furthermore, the documents and information BKD generated or obtained "originated in a confidence". The only remaining question is whether BKD has waived its privilege.

■ As stated before, BKD has steadfastly asserted its privilege. Whatever statements or acts Marion may have made is irrelevant since the privilege is held solely by BKD and only it can manifest an intention to waive it. Firstly, the privilege has not been waived by BKD and Marion's production of the court-mandated privilege log. The privilege log only generally identifies the allegedly protected documents; it does not contain any specifics as to any document and does not constitute an intended disclosure in full to third parties. *See, In re American Reserve Corp.*, 1990 WL 208679, subsection # 4 (N.D.Ill.1990). Secondly, BKD's objection to the subpoena was timely. Prior discovery to Marion did not obligate BKD to assert its privilege. It had no obligation to formally assert its privilege until such time Pepsico sought the documents in question from it. The Court finds that BKD has not waived its accountant-client privilege.

### Self–Critical Analysis Privilege

This issue is moot. As the parties agree, and the Magistrate Judge reasoned, this "privilege" is a creature of federal law. Since privilege in this case is governed by state law, and no party has cited to this Court any Illinois state caselaw on the "self-critical analysis privilege", the Court finds no reason to address the applicability of such a privilege.

### Work Product Doctrine

■ Federal law governs the work-product doctrine. Rule 26(b)(3) Fed.R.Civ. P.; *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir.2000); *Petersen v. Douglas County Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir.1992); *Falkner v. General Motors Corp.*, 200 F.R.D. 620, 622 (S.D.Iowa 2001); *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 197 F.R.D. 620, 628 (S.D.Iowa 2000); *Estate of Phillip P. Chopper v. R.J. Reynolds Tobacco Co.*, 195 F.R.D.

648, 650 (N.D.Iowa 2000); *Estate of Phillip P. Chopper v. R.J. Reynolds Tobacco Co.*, 195 F.R.D. 648 (N.D.Iowa 2000). The work product doctrine restricts discovery of documents prepared in anticipation of litigation by or for another party or by or for that other party's attorney or agent. Rule 26(b)(3). Documents "prepared in anticipation of litigation" may include business records that were specifically selected and compiled by the other party or its agent in preparation of litigation and "that the mere acknowledgment of their selection would reveal mental impressions concerning the potential litigation." *Petersen*, at 1189. Documents are not protected simply because a party transferred the documents to an attorney, law firm or a corporate litigation department. *Petersen*, at 1189. Furthermore, documents that were assembled in the ordinary course of business or for nonlitigation purposes are not protected under the work product doctrine. *Petersen*, at 1189; *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.1987). Essentially, when a court is deciding whether the parties' "anticipate litigation",

> "[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular*course of business rather than for purposes of litigation."

*Simon*, at 401 (citations omitted).

■■■■ There are two kinds of work product: ordinary work product and opinion work product. *Baker*, at 1054; *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n. 4 (8th Cir.1998); *St. Paul Reinsurance*, at 628 *citing Baker, supra.*; *Chopper*, 195 F.R.D. at 650 *citing Baker, supra.*; *Chopper*, 195 F.R.D. at 649 *citing Baker, supra.* Ordinary work product includes raw factual material and/or information, even photographs. *Baker*, at 1054; *Gundacker*, at 848 n. 4; *Falkner*, at 623; *St. Paul Reinsurance*, at 628; *Chop-*

*per*, 195 F.R.D. at 650; *Chopper*, 195 F.R.D. at 649. Ordinary work product is not discoverable unless the party seeking it can show a substantial need for the materials and cannot obtain the substantial equivalent of the materials through other means. Rule 26(b)(3); *Baker*, at 1054; *Gundacker*, at 848; *Falkner*, at 623; *St. Paul Reinsurance*, at 628 *quoting Baker, supra.*; *Chopper*, 195 F.R.D. at 650; *Chopper*, 195 F.R.D. at 649. Although ordinary work product is often that of an attorney, "the concept of work product is not confined to information or materials gathered or assembled by a lawyer." *Falkner*, at 623 *quoting Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir.1977).

■■■■ Opinion work product includes an attorney's mental impressions, conclusions, opinions or legal theories concerning the litigation. *Baker*, at 1054; *Gundacker*, at 848 n. 5; *St. Paul Reinsurance*, at 628 *quoting Baker, supra.*; *Chopper*, 195 F.R.D. at 650; *Chopper*, 195 F.R.D. at 649. Examples of opinion work product include notes and memoranda of a party's attorney regarding witness interviews, and the selection and compilation of documents in preparation for trial. *Baker*, at 1054; *Petersen*, at 1189; *Chopper*, 195 F.R.D. at 650 (citations omitted); *Chopper*, 195 F.R.D. at 649 (citations omitted). Opinion work product "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Baker*, at 1054; *St. Paul Reinsurance*, at 628 *quoting Baker, supra.*; *Chopper*, 195 F.R.D. at 650 *citing Baker, supra.*; *Chopper*, 195 F.R.D. at 649 *citing Baker, supra.*

■■■■ It appears to this Court that some of the documents sought pursuant to Requests Nos. 4 and 5 of the subject subpoena constitute ordinary work product. Upon review of the parties' briefs and the hearing transcript, it is apparent that quality control and production assessments and evaluations were performed, from approximately July 1998 until August 2001, in the ordinary course of BKD's business as requested by Marion.[12]

---

12. According to the deposition testimony of Har-

ry L. Crisp, CEO of Marion, audits such as the

However, during the summer of 2001, Marion's counsel retained the services of BKD to assist counsel in reviewing quality control and production matters allegedly giving rise to the claims asserted by Pepsico in the underlying litigation. This retention of services was memorialized in an "engagement letter" sent by BKD to Marion's counsel on or about August 20, 2001.[13] Certain documents were generated by BKD as a result of this "engagement letter". It is these post-August 2001 documents that Marion claims are entitled to protection under the work product doctrine. The Court concurs. Any documents generated or compiled in connection with the August 2001 "engagement letter" are ordinary work product. As such they are entitled to protection unless Pepsico has shown a substantial need for the documents or that the substantial equivalent of the information contained in these documents cannot be procured by other means. Pepsico has failed to make such a showing especially in light of the fact that Marion has already produced internal quality control documents as well as internal summary audit reviews.[14]

In conclusion, this Court finds that the documents and communications sought pursuant to Request Nos. 4 and 5 of the subject subpoena, as well as any subpoenaed deposition testimony regarding said documents, are protected by the Illinois accountant-client privilege, 225 ILCS § 450/27. Furthermore, any documents specifically generated and/or compiled in connection with the "engagement letter" of August 2001 are protected under the work product doctrine, Rule 26(b)(3).

### ORDER

In accordance with the memorandum filed herein this date,

IT IS HEREBY ORDERED that United States Magistrate Judge Audrey G. Fleissig's order (# 9), filed February 11, 2002 be and is **VACATED**.

IT IS FURTHER ORDERED that plaintiff Pepsico's emergency motion to compel (# 1) be and is **DENIED**.

IT IS FINALLY ORDERED that defendant Marion and movant BKD's motion to quash (# 3) be and is **GRANTED**.

---

ones now in dispute, were done internally by a Marion employee, Tracy Loyd. When Mr. Loyd left Marion's employ, this task was turned over to BKD.

13. It is quite apparent from the parties' pleadings and the hearing transcript that the impression was generated that a letter or some type of document, dated August 20, 2001, was created and sent by Marion's counsel to BKD. No such letter or document is presently filed before this Court. The only letter bearing the date of August 20, 2001 which reflects the arrangement for ser-

vices reached between Marion's counsel and BKD regarding BKD's review of quality control and production matters in light of the underlying litigation is part of Exhibit 8, filed February 7, 2002 (under seal). This letter was sent from BKD to Mr. John Rotunno of Bell, Boyd & Lloyd, L.L.C. of Chicago, Illinois.

14. The documents sought are considered to be "external" because they were generated by someone other than a Marion employee.